This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                                    **NO.  30,531**

**BRYAN ROTH,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Jacqueline L. Cooper, Acting Chief Public Defender
Jeffrey J. Buckels
Capital Crimes Division
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

The State appeals from the district court's order granting Defendant Bryan Roth's motion to suppress statements made to police during a custodial interrogation. The district court ruled that Defendant was deceived as to the subject matter of the police interview and, therefore, he did not make a knowing, intelligent, and voluntary waiver of his constitutional right against self-incrimination. Because the district court failed to apply the totality-of-the-circumstances test to the facts of this case, we reverse.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In this case, the facts are undisputed. It is the application of the law to the facts that is at issue. On April 30, 2009, Defendant's mother filed a police report against him for stealing her debit card and several items of jewelry, including several necklaces, a diamond wedding ring, and a dinner ring. At the time of the thefts, Defendant was on probation for attempted aggravated assault against his mother. On May 1, 2009, after learning about the police report, Defendant's probation officer called him into his office. Defendant was given and failed a drug test and then admitted to stealing his mother's debit card. Defendant was jailed for violating probation from that date until September 24, 2009. Subsequently, Defendant's mother

disappeared on or about May 3 or 4, 2009. It was later discovered that she had been murdered. Defendant's wife, Cathleen Roth, and several accomplices have been charged with killing Defendant's mother and disposing of her body.

After Defendant was released from jail on September 24, 2009, he was arrested on an outstanding felony warrant for the theft of his mother's debit card and jewelry. He was brought to the police station in handcuffs. Defendant was seated at a conference room table without handcuffs while two detectives asked him questions. Prior to the questioning, one of the detectives stated to Defendant: "[W]e're here in reference to the disappearance of your mother. . . . I'm going to advise you of your [*Miranda*] rights . . . [j]ust to . . . protect you. I know that you were in prison during that or in jail." Defendant clarified that he had been in jail which "is a lot better than prison." The detective then read Defendant his *Miranda* rights. Defendant was not asked expressly if he waived his *Miranda* rights, and he was not asked to sign a waiver of rights form. After stating that he understood the *Miranda* rights, Defendant began answering the detective's questions. The interview began at approximately 11:24 p.m. and lasted sixteen minutes.

On October 9, 2009, Defendant was charged with several crimes relating to the theft of his mother's jewelry and also the theft and unauthorized use of his mother's debit card, as well as conspiracy to commit these crimes. Defendant filed a motion

3

to suppress his statements from September 24, 2009. Following a hearing, the district court granted Defendant's motion. The State's motion to reconsider was denied. The State's appeal followed.

**II.    DISCUSSION**

**A.    Standard of Review**

A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. The appellate court "view[s] the facts in the light most favorable to the prevailing party[] and . . . review[s] de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. "'The ultimate determination of whether a valid waiver of [*Miranda*] rights has occurred, however, is a question of law which we review de novo.'" *State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 (quoting *State v. Martinez*, 1999-NMSC-018, ¶ 15, 127 N.M. 207, 979 P.2d 718) (alteration in original).

**B.    *Miranda* Rights**

To protect a defendant's Fifth Amendment right against self-incrimination, "interrogators are required to inform a suspect, before beginning questioning[,] (1) of the right to remain silent, (2) of the prospect that any statement made may be used as evidence against him [or] her, and (3) of the right to an attorney during an

4

interrogation." *State v. Quinones*, 2011-NMCA-018, ¶ 9, 149 N.M. 294, 248 P.3d 336. "Before statements obtained during a custodial interrogation may be introduced at trial, the [s]tate must demonstrate a knowing, intelligent, and voluntary waiver of constitutional rights by a preponderance of the evidence." *Gutierrez*, 2011-NMSC-024, ¶ 7 (internal quotation marks and citation omitted). *Miranda* rights need not be expressly waived orally or in a writing signed by the defendant. *Gutierrez*, 2011-NMSC-024 ¶ 17; *see Martinez*, 1999-NMSC-018, ¶ 19 ("[W]e do not require the [s]tate to prove that [the defendant] expressly waived his rights in order to demonstrate a constitutionally valid waiver."). In *Martinez*, our Supreme Court found an implied waiver of rights based on a juvenile's course of conduct in answering police questions after being advised of his *Miranda* rights. *Martinez*, 1999-NMSC-018, ¶ 23. The State must demonstrate that (1) the implied waiver was knowing and intelligent; (2) it was made with a full awareness of both the nature of the right being abandoned, and the consequences of the decision to abandon it; and (3) it was voluntary, the product of a free and deliberate choice, rather than police intimidation, coercion, or deception. *Id.* ¶ 14.

> Courts evaluate the totality of the circumstances and the particular facts, including consideration of the mental and physical condition, background, experience, and conduct of the accused, as well as the conduct of the police, in determining whether the [s]tate has successfully carried its burden in demonstrating a knowing and voluntary waiver.

5

*Id.* (internal quotation marks and citations omitted).

**C.      Analysis**

**1.      Defendant's Waiver is Valid Under the Fifth Amendment of the United States Constitution**

On September 24, 2009, Defendant was in custody at the police station, having been arrested on a warrant for stealing his mother's debit card, when he was interrogated by two homicide detectives.  Defendant did not expressly state that he waived his *Miranda* rights and was not asked to sign a written waiver form.  We assess the totality of the circumstances in order to determine whether Defendant implicitly waived his *Miranda* rights.

We first examine whether Defendant knowingly and intelligently waived his rights.  On September 24, 2009, Defendant was nineteen years old and married.  *See State v. Jonathan M.*, 109 N.M. 789, 791, 791 P.2d 64, 66 (1990) (stating that "a child over age fifteen is unlikely to make an involuntary statement . . . after receiving *Miranda* warnings").  Defendant had already had several experiences with juvenile and adult arrests and court proceedings.  *See Martinez*, 1999-NMSC-018, ¶ 24 (discussing that "previous contacts with law enforcement . . . would . . . ma[k]e the surroundings much less intimidating").  As an adult, Defendant had been in prison and jail for crimes against his mother's person and her property.  Defendant pled guilty to attempted aggravated assault of his mother for which he spent time in prison and was

jailed for probation violations when he tested positive for a controlled substance and admitted to stealing his mother's debit card.

The interview took place at 11:24 p.m. and lasted sixteen minutes. *See Martinez*, 1999-NMSC-018, ¶ 22 (observing that an interview lasting approximately one hour "was not particularly long"). The detectives testified that Defendant was not under the influence of drugs or alcohol. They testified that Defendant was awake, alert, coherent, and talkative. Prior to the questioning of Defendant, the detectives read him the *Miranda* rights. As each right was read to him, Defendant responded in the affirmative that he understood it. After all the rights were read, Defendant again responded in the affirmative that he understood his rights. Defendant was also asked twice and responded twice that he understood that he had the right to stop answering questions at any time. After the *Miranda* rights were read to him, and he stated that he understood each of them, Defendant began immediately answering the detectives' questions. Defendant never stopped answering the questions, never requested to stop, and did not request an attorney. We hold that, under the totality of the circumstances, Defendant knowingly and intelligently waived his *Miranda* rights.

We next address whether Defendant voluntarily waived his rights or whether his waiver was the product of police intimidation, coercion, or deception. *See Gutierrez*, 2011-NMSC-024, ¶ 22 (observing that a defendant's claim that he did not

voluntarily waive his Fifth Amendment rights under *Miranda* requires a separate analysis from whether the police coerced the defendant into confessing). Defendant argues that the detectives deceived him into waiving his *Miranda* rights. Defendant contends that he was deceived because the two homicide detectives informed him at the outset of the interview and prior to being advised of his rights that they were there in reference to the disappearance of his mother. Yet, they had arrested him on an outstanding felony warrant for the theft of his mother's debit card and jewelry, and they proceeded to question him about stealing his mother's debit card and using it with his wife to make unauthorized purchases that led to his admissions and the larceny and conspiracy indictments. Moreover, Defendant argues that because the detectives told him that the subject of the interview was his mother's disappearance and because they told him they knew he had been in jail when his mother disappeared, he was deceived into a sense of security about talking to the detectives, and he was tricked into waiving his rights. In addition, according to Defendant, his prior attorney had assured him that the theft charges were "all finished" and "done with" once he admitted to stealing his mother's debit card in connection with the probation revocation proceedings. As such, Defendant was also deceived into a sense of security about waiving his rights and answering the theft-related questions. Thus, Defendant contends that the detectives affirmatively misrepresented the subject matter

8

of the interview—his mother's disappearance—and their failure to tell him that he would also be questioned about the thefts was so deceptive that it invalidated his waiver of his *Miranda* rights. The district court agreed and granted the motion to suppress, stating, at the second hearing, that the police "cannot deceive someone to get their waiver" and, since the waiver was "a product of deception[,] . . . it was . . . defective." We disagree.

Our case law requires that we view any alleged police deception in light of the totality of the circumstances to determine whether a waiver is voluntary. *See Gutierrez*, 2011-NMSC-024, ¶ 15 ("One advantage of the totality-of-the-circumstances approach is that it allows courts to take into account those special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved. Another advantage is that it refrains from imposing rigid restraints on police and courts in dealing with an experienced older juvenile with an extensive prior record who knowingly and intelligently waives his Fifth Amendment rights and voluntarily consents to interrogation." (internal quotation marks and citations omitted)); *see also State v. Evans*, 2009-NMSC-027, ¶ 46, 146 N.M. 319, 210 P.3d 216 (applying the totality-of-the-circumstances test in the context of determining whether a confession is voluntary and stating that "[o]ur case law makes clear that deception is not coercive per se");

*State v. Aguirre*, 91 N.M. 672, 674, 579 P.2d 798, 800 (Ct. App. 1978) ("[D]eception, in itself, is not a basis for ruling, as a matter of law, that a confession should be suppressed."). In *Martinez*, the defendant, a juvenile, argued that "the police prevented a knowing and voluntary waiver of rights by excluding his mother from the first interview by way of deception." 1999-NMSC-018, ¶ 20. His mother had been told that the defendant was being questioned about a shoplifting incident when he actually was being questioned about a homicide. *Id.* ¶ 3. Our Supreme Court analyzed the deception in *Martinez* in light of the totality of the circumstances, concluding that the defendant had voluntarily waived his rights. *Id.* ¶ 23 (finding an implied waiver by a juvenile based on his course of conduct in answering police questions after being advised of his *Miranda* rights).

In *Martinez*, our Supreme Court relied on *Colorado v. Spring*, 479 U.S. 564, 575-77 & n.8 (1987), wherein the United States Supreme Court "refus[ed] to require police to inform a suspect of the scope or subject of an interrogation but [left] unaddressed the situation of an affirmative misrepresentation to a suspect by police." *Martinez*, 1999-NMSC-018, ¶ 24. Defendant contends that the detectives in this case so affirmatively misrepresented the subject matter of the interview that his subsequent waiver of rights was invalid. The State argues that no affirmative misrepresentation

occurred here and the totality-of-the-circumstances test validates Defendant's waiver. We agree with the State.

In this case, where the facts are undisputed, but the application of the law to the facts is at issue, we review de novo whether the detectives' statement at the outset of the interview prior to the *Miranda* rights constituted an affirmative misrepresentation that invalidated Defendant's waiver. *See State v. Attaway*, 117 N.M. 141, 145-46, 870 P.2d 103, 107-08 (1994) (concluding that "the mixed question [of fact and law] involved in determining exigent [circumstances] lies closest in proximity to a conclusion of law[] and . . . that such determinations are to be reviewed de novo"), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, 138 N.M. 9, 116 P.3d 80; *see also State v. Williamson*, 2009-NMSC-039, ¶ 27, 146 N.M. 488, 212 P.3d 376 (observing that "[i]t is the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement . . . in factual context[,] and we can discharge that duty only through meaningful review of lower court determinations [] applying de novo review to warrantless searches because the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles" (first alteration in original) (internal quotation marks and citations omitted)).

As we discussed above with regard to the totality of the circumstances at the time of the interview, Defendant was a nineteen-year-old married adult who was in full control of his faculties and had prior exposure to the criminal justice system. Defendant was advised of his rights and stated that he understood each of them. He immediately proceeded to answer the detectives' questions and never hesitated or requested an attorney. Our review of the interview reveals that (1) the detectives did not deceive Defendant about the subject matter of the interview when virtually all of the detectives' questions related to his mother's disappearance and the events leading up to it, including his past and present crimes against his mother's person and her property; (2) Defendant's relationship with his mother and his mother's relationship with his wife, who is accused with others of the kidnaping and killing; and (3) the possible motives Defendant and others may have had for the killing immediately following his mother's police report against him and his wife about the thefts. The questions also focused on what Defendant knew from others about his mother's kidnaping and murder, whether he had helped to plan these crimes, and what he had told others about his negative feelings about his mother. We conclude that there was no affirmative misrepresentation here. Defendant's waiver was not the product of police deception.

During the interview, Defendant did not tell the detectives that his prior attorney had assured him that the debit card theft charges were "all finished" once he confessed to stealing the card and violating his probation. *See State v. Munoz*, 1998-NMSC-048, ¶ 26, 126 N.M. 535, 972 P.2d 847 (observing that where "[the d]efendant's assertion is entirely subjective and there is nothing else put forth, such as a mode of reaction or a refusal to cooperate, to suggest that the FBI agents should have known that this particular suspect should be treated according to a heightened apprehension of police in a questioning in a murder investigation[,] . . . there was no opportunity for [police] misconduct"). However, Defendant had just been arrested for that very crime. Similarly, Defendant confidently and mistakenly may have assumed that, because the police knew that he had been in jail at the time of his mother's disappearance and murder, he could not have had any criminal exposure for participating in or facilitating these or any other crimes against his mother's person and property. The detectives did not make affirmative misrepresentations to him to that effect. Defendant was likewise mistaken in apparently assuming that if he told the police that his wife took the debit card, he would have no criminal exposure as an accessory or as a co-conspirator for using the card with his wife to make unauthorized purchases. While advising Defendant of his *Miranda* rights, the detectives informed him twice that he could stop answering questions at any time, and he acknowledged

twice that he understood. Throughout the sixteen-minute interview, Defendant did not stop answering questions, hesitate, or request an attorney. We conclude that, under the totality of the circumstances, the State showed, by a preponderance of the evidence, that Defendant voluntarily waived his *Miranda* rights. We reverse the district court's decision to grant the motion to suppress.

2.       Defendant's Waiver Was Valid Under the New Mexico State Constitution

Defendant argues that the New Mexico State Constitution Article II, Section 15 provides greater protection to Defendant than the United States Constitution in this context. We disagree.

In *State v. Gomez*, our Supreme Court adopted the interstitial approach to interpreting the New Mexico State Constitution. 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1. "A state court adopting this approach may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *Id.* The district court heard argument on the state constitutional question and suggested that New Mexico may provide broader protection in this context. The district court made no formal ruling on the matter; however, it concluded that Defendant's statements should be suppressed under the Fifth Amendment of the United States Constitution. Since

14

we have reversed this determination, we now address whether Defendant is afforded more protection under the state constitution.

Defendant argues that the recent United States Supreme Court majority opinion in *Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250 (2010), is flawed because it focuses on whether a defendant unambiguously asserted his rights. Defendant urges us to adopt the minority opinion's critique of this approach and focus on whether the State has shown an unambiguous waiver as being more in line with New Mexico constitutional law. We are not persuaded. Rather, we agree with the district court's assessment that *Thompkins* provides further support for the implied waiver inquiry set forth in *Martinez*, which recognizes the totality-of-the-circumstances approach that includes a focus on the conduct of the defendant and the police as relevant to whether the state has met its burden. In *Gutierrez*, our Supreme Court recognized that the *Thompkins* majority opinion provided support for New Mexico's law on implied waivers. In quoting the opinion's language, our Supreme Court explained that "[t]he main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." 2011-NMSC-024, ¶ 18 (alteration in original) (internal quotation marks and citation omitted). Our Supreme Court reasoned that, "[i]f anything, our subsequent cases have reduced the impact of the *Miranda* rule on legitimate law enforcement while reaffirming the decision's core

15

ruling that unwarned statements may not be used as evidence in the prosecution's case in chief." *Id*. (alteration in original) (internal quotation marks and citation omitted). Moreover, this Court has recently declined to interpret Article II, Section 15 of the New Mexico Constitution more expansively than the Fifth Amendment. *See Quinones*, 2011-NMCA-018, ¶¶ 17-18; *see also State v. Perry*, 2009-NMCA-052, ¶ 31, 146 N.M. 208, 207 P.3d 1185.

Defendant further argues that we should provide more protection under the New Mexico Constitution because "greater consistency can be achieved in New Mexico if our courts base their rulings on our own constitution[,]" and "because the state courts are better able to address local interests and balance the rights of citizens and the authority of the police." We believe that New Mexico's totality-of-the-circumstances test for determining whether a waiver of *Miranda* rights is knowing, intelligent, and voluntary, adequately addresses any unique attributes of a particular defendant's background, his or her cultural and linguistic heritage, and expectations towards authority figures in this multi-cultural state. These unique attributes, if present in a particular defendant, would certainly impact a totality-of-the-circumstances inquiry. In this case, however, there is no indication that any of these attributes were at play. Defendant was responsive, talkative, and confident prior to and during the interview in response to the reading of his *Miranda* rights and in his interaction with the

16

detectives. Defendant held his own during the interview in denying that he knew anything about his mother's stolen jewelry and debit card and "sticking by" his story that he knew nothing about his mother's murder. *See Martinez*, 1999-NMSC-018, ¶ 24 (reviewing whether the statements were voluntary, our Supreme Court stated that "our review of the interview reveals that [the defendant]'s will was not overborne and that he spoke freely and voluntarily to the police, even maintaining throughout . . . that he did not kill [her]").

Under the totality of the circumstances of this case, we decline to hold that Defendant's statements must be suppressed under the New Mexico State Constitution.

**III.    CONCLUSION**

Reviewing the totality of the circumstances, including the detectives' and Defendant's conduct, we conclude that, under the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution, the State satisfied its burden of demonstrating by a preponderance of the evidence that Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. We reverse the district court's order suppressing Defendant's statements at the September 24, 2009 interview and remand for further proceedings in district court.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**J. MILES HANISEE, Judge**