2005-NMSC-017

116 P.3d 72

**STATE of New Mexico, Plaintiff–Petitioner/Cross–Respondent,**

v.

**Reymundo Carlos GARCIA, Defendant–Respondent/Cross–Petitioner.**

No. 28,631.

Supreme Court of New Mexico.

June 21, 2005.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, NM, for Plaintiff–Petitioner/Cross–Respondent.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Santa Fe, NM, for Defendant–Respondent/Cross–Petitioner.

## OPINION

BOSSON, Chief Justice.

{1} We examine two issues in the context of police officers lawfully observing a gun from outside a car, and later seizing the gun from under the passenger seat. We first inquire what additional facts must the State prove, beyond the location of the gun, to establish that the passenger, a felon, is in

constructive possession of a firearm. Second, we ask what additional facts justify warrantless entry into the car and seizure of the gun consistent with the New Mexico Constitution. In a divided opinion, our Court of Appeals upheld the search and seizure, but held the evidence was insufficient to sustain a conviction for being a felon in possession. We agree with the first holding but disagree that the evidence was insufficient to sustain the conviction. Accordingly, we affirm in part and reverse in part, thereby upholding the judgment of the district court.

## BACKGROUND

{2} At around midnight, April 25, 2001, three police officers from the Bosque Farms Police Department and Valencia County Sheriff's Department were leaving a local gas station when they observed a car drive through the station at an extremely low rate of speed. The vehicle had a dealer demonstration tag rather than a license plate. Realizing that dealer tags were not allowed after dealership business hours, Officer Hatch pulled the vehicle over. Before the car had come to a complete stop, Defendant stepped out of the passenger side of the vehicle and slouched against the vehicle with the right side of his body hidden from view. Defendant stared at Officer Hatch with an aggressive look described as a "thousand yard stare." Officer Hatch drew his weapon at a low, ready position and ordered Defendant back into the car. Defendant did not respond to the first command but eventually returned to the car.

{3} Officer Hatch and Officer Emmons approached the car. Officer Hatch asked the driver for license, registration, and proof of insurance. The driver only had a New Mexico identification card. The officers then asked if Defendant had a valid driver's license, so that Defendant could take over for the driver. The officers ran a record check on the names of Defendant and the driver. Officer Emmons cited the driver for not having vehicle registration or insurance.

{4} When the officers approached the car again to give the citations to the driver, Officer Hatch looked through the passenger side window of the vehicle and saw what appeared to be a gun in a holster protruding from underneath the rear of the passenger seat. Once he saw the gun, Officer Hatch told Officer Emmons to stop what he was doing. Out of concern for officer safety, the officers removed the driver and Defendant from the vehicle, patted them down for weapons, handcuffed and detained them. As Defendant got out of the vehicle, Officer Hatch observed a loaded ammunition clip located on top of the passenger seat in what was described as the "palm" of the seat. The clip was five inches by one inch by one-half inch. Officer Hatch moved the seat forward to remove the gun and discovered an open beer bottle, lying directly next to the gun, with the top of the bottle pointing toward the front of the seat. The officer removed the gun, which was a loaded .22 caliber Ruger. Another officer unloaded the gun and a live round from the chamber. The ammunition clip found on Defendant's seat was determined to fit the gun located under his seat.

{5} After the officers discovered the firearm and the beer bottle, Defendant admitted to drinking in the vehicle, and volunteered that he knew he was not supposed to be around firearms because of his prior felony convictions. The officers arrested Defendant for concealing his identity because he had initially given another name to the officers. The check of Defendant's criminal history confirmed Defendant's status as a felon. The officers then arrested Defendant for being a felon in possession of a firearm, and possessing an alcoholic beverage in an open container in a vehicle. *See* NMSA 1978, § 30–7–16 (1987, prior to 2001 amendment); NMSA 1978, § 66–8–138 (1999, prior to 2001 amendment).

{6} Defendant challenged the constitutionality of the search. Because this was a bench trial, the parties agreed to conduct the evidentiary hearing regarding the search during the trial. The district court denied the motion to suppress because there were exigent circumstances justifying the search and found Defendant guilty on both counts. On appeal, the Court of Appeals reversed the verdict of being a felon in possession of a firearm, concluding that there was insufficient evidence to prove Defendant's possession of the firearm beyond a reasonable

doubt. *State v. Garcia,* 2004–NMCA–066, ¶ 1, 135 N.M. 595, 92 P.3d 41. However, the court found the search of the vehicle was constitutional and upheld Defendant's conviction for possession of an alcoholic beverage in an open container. *Id.* ¶¶ 30, 34. We granted the State's certiorari petition to review the felon-in-possession charge. Defendant filed a cross-petition claiming the search of the car was unconstitutional, and seeking to overturn the conviction for possession of an open alcoholic container. We also granted Defendant's petition.

## ARGUMENT

### Sufficiency of the Evidence that Defendant was a Felon in Possession

{7} We first address the sufficiency of the evidence that led to the conviction for being a felon in possession of a firearm. Because Defendant stipulated to being a convicted felon, our inquiry rests on the sufficiency of the evidence to prove possession.

{8} The standard of proof in a criminal case, beyond a reasonable doubt, is the lens through which we judge the sufficiency of the evidence. The proper focus for that lens is *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). Relying on commentators and precedent from the New Mexico and United States Supreme Courts, the Court of Appeals indicated that the burden of proof required the jury to be in " 'a subjective state of near certitude of the guilt of the accused.' " *Garcia,* 2004–NMCA–066, ¶ 8 (quoting *State v. Wynn,* 2001–NMCA–020, ¶ 5, 130 N.M. 381, 24 P.3d 816). The Court of Appeals further characterized the standard as requiring proof "to a moral certainty," which it defined as "the highest degree of confidence with which an historical or physical fact can be known." *Id.* ¶ 10 (quoted authority omitted). Then, the Court of Appeals concluded that such a high standard of proof made the evidence in this particular case insufficient as a matter of law to conclude that Defendant was in possession of the firearm. *Id.* ¶ 15.

{9} The State protests that the Court of Appeals opinion creates a standard of review in conflict with both the Uniform Jury Instructions and this Court's previous definitions of beyond a reasonable doubt. *See* UJI

14–5060 NMRA 2005; *State v. Rodriguez,* 23 N.M. 156, 167 P. 426 (1917). The Uniform Jury Instructions define reasonable doubt as "a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life." UJI 14–5060. The State further argues that the Court of Appeals' articulation of the standard confuses the established precedent of this Court by using phrases such as "proof to a near certainty" and "proof to a moral certainty." Such phrases, the State argues, are unclear, imprecise and potentially confusing, because they are inconsistent with the Uniform Jury Instructions and the case law on which those instructions are founded. Not surprisingly, Defendant agrees with the Court of Appeals and suggests that we modify our Uniform Jury Instructions to conform to these new characterizations.

{10} As we see it, both sides are in error. The State mischaracterizes the Court of Appeals opinion as a change in the standard of proof; Defendant erroneously takes the issue one step further and suggests that we modify our Uniform Jury Instructions. We need to be clear on this subject. The definition of proof beyond a reasonable doubt remains today what it has been for decades, perhaps longer. UJI 14–5060 adequately expresses that definition and is to be used in all jury trials, unadorned by any added, illustrative language from this or any other opinion. We do not believe the Court of Appeals intended any such modification of the definition.

{11} We do agree with the State that unwarranted focus on phrases like "proof to a near certainty" and "proof to a moral certainty" has the potential to create confusion in the law, leaving an unfortunate impression that the law may be something other than what is stated in UJI 14–5060. Accordingly, we discourage reliance on these alternative formulations. As one scholar has noted in a different context, it is when courts are "explicit in opinions about the application of the standard to the particular facts" that we give the most guidance, rather than when we engage in "ever more puzzling reformulations of the test being applied." Michael B. Browde, *Substantial Evidence Reconsidered:*

*The Post–Duke City Difficulties and Some Suggestions for Their Resolution*, 18 N.M. L.Rev. 525, 553–54 (1988) (discussing the definition of substantial evidence, in the context of administrative law). We attempt now to clarify our standard of beyond a reasonable doubt by applying it to the facts of this case.

{12} When reviewing a verdict for sufficiency of the evidence, our role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused. *State v. Sizemore*, 115 N.M. 753, 758, 858 P.2d 420, 425 (Ct.App.1993). When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the State has the burden of proof beyond a reasonable doubt. *State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988), *holding superceded as recognized in State v. Gutierrez*, 1998–NMCA–172, ¶ 10, 126 N.M. 366, 969 P.2d 970. The court should not re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence. *Id.; State v. Sutphin*, 107 N.M. 126, 130, 753 P.2d 1314, 1318 (1988). However, we have also observed that "[e]vidence equally consistent with two hypotheses tends to prove neither." *Herron v. State*, 111 N.M. 357, 362, 805 P.2d 624, 629 (1991). In other words, "evidence equally consistent with two inferences does not, without more, provide a basis for adopting either one— especially beyond a reasonable doubt." *Garcia*, 114 N.M. at 275, 837 P.2d at 868.

{13} Because Defendant was not in actual possession of the gun, the conviction was based on a theory of constructive possession. For constructive possession, the State must prove both that Defendant knew the gun was present in the car and exercised control over it. *See* UJI 14–130 NMRA 2005; *State v. Morales*, 2002–NMCA–052, ¶ 28, 132 N.M. 146, 45 P.3d 406. Proximity alone does not constitute possession. UJI 14–130. "[T]his Court must be able to articulate a reasonable analysis that the [fact-finder] might have used to determine knowl-

edge and control." *Morales*, 2002–NMCA–052, ¶ 29, 132 N.M. 146, 45 P.3d 406.

{14} Knowledge depends on whether the fact-finder had sufficient evidence to conclude that Defendant knew the gun was under his seat. "The State must prove that defendant had physical or constructive possession with knowledge of the presence and character of the item possessed. Such proof may be by the conduct and actions of the defendant." *State v. Bauske*, 86 N.M. 484, 485, 525 P.2d 411, 412 (Ct.App.1974) (internal citation omitted).

{15} The evidence in the present case was sufficient to give rise to a reasonable inference that Defendant had knowledge of the gun. He placed his beer bottle under the seat in a position right next to the gun, such that it would be hard for anyone not to be aware of the gun. Upon getting out of the car, he acted in a manner that arguably showed a consciousness of guilt. Finally, Defendant was sitting on the ammunition clip that matched the gun. The Court of Appeals concluded there was sufficient evidence to support an inference of knowledge, and we agree. *Garcia*, 2004–NMCA–066, ¶ 19.

{16} In addition to knowledge, there must be sufficient evidence of control. *Sizemore*, 115 N.M. at 756, 858 P.2d at 423. The Court of Appeals concluded the evidence of control was insufficient, and it is here that we disagree.

{17} The Court of Appeals relied on the principle this Court has articulated concerning evidence that is equally consistent with two hypotheses. *See Herron*, 111 N.M. at 362, 805 P.2d at 629 ("Evidence equally consistent with two hypotheses tends to prove neither."). Reasoning that the location of the gun, protruding from the rear of the passenger seat, made the gun equally accessible to both driver and passenger, the Court concluded that the driver could easily have reached over and placed the gun in that position, behind the passenger seat. The Court then concluded that the evidence was equally suggestive of control by either party and thus was not probative of possession by Defendant beyond a reasonable doubt. *See Garcia*, 2004–NMCA–066, ¶ 12, 15. The Court relied on *State v. Sanchez*, 98 N.M.

428, 430, 649 P.2d 496, 498 (Ct.App.1982), for the proposition that it was required to determine whether the evidence was "inconsistent with every reasonable hypothesis of innocence."

{18} We think the Court of Appeals was mistaken in its reliance on *Sanchez*. In *Sanchez*, the Court concluded that the state's evidence was inconsistent with every reasonable hypothesis of innocence, and therefore was sufficient to support the conviction. That determination seems appropriate. However, the indication in *Sanchez* that an appellate court may not affirm a conviction *unless* the evidence is inconsistent with every reasonable hypothesis of innocence expressly did not survive this Court's opinion in *State v. Brown,* 100 N.M. 726, 727–28, 676 P.2d 253, 254–55 (1984) (rejecting a *Sanchez*-based standard of review stated as, "whether a jury could reasonably find that the circumstantial evidence is inconsistent with every reasonable hypothesis of innocence"). After *Brown, Sanchez* can no longer be relied on for the proposition that substantial evidence in support of a conviction must be inconsistent with any reasonable hypothesis of innocence.

{19} The Court of Appeals has attempted to provide greater clarity to appellate review of the evidence to support a conviction. In that same vein, the Court stated that "[w]here the evidence viewed most favorably to the State necessarily supports a reasonable hypothesis of innocence, the State, by definition, has failed to prove its case beyond a reasonable doubt...." *Garcia,* 2004–NMCA–066, ¶ 16 (emphasis omitted). That statement is no longer an appropriate standard for a New Mexico appellate court after *Brown. Cf. State v. Johnson,* 839 So.2d 1247, 1253 (La.Ct.App.2003) (relying in part on a Louisiana statute that provides a special rule when circumstantial evidence must be relied upon to support a conviction), *rev'd on other grounds,* 870 So.2d 995 (La.2004). *See generally United States v. Bell,* 678 F.2d 547, 549 n. 3 (5th Cir.1982) (en banc) (noting that all of the circuit courts "have abandoned the hypothesis of innocence phraseology").

{20} We recognize the strength of the observation in the special concurrence in *Bell,* on which the Court of Appeals in part relied, *see Garcia,* 2004–NMCA–066, ¶ 16, that under some circumstances "a reasonable trier of fact must necessarily entertain a reasonable doubt about guilt." *Bell,* 678 F.2d at 550 (Anderson, J., specially concurring) (emphasis omitted). In the final analysis, however, we think it is unproductive to try to formulate a standard of appellate review in terms of a hypothesis of innocence, because inevitably it appears to intrude upon the role of the fact finder. As we shall see in the case before us, the State's evidence supported reasonable inferences of Defendant's relationship to the gun that the jury was entitled to draw in finding possession beyond a reasonable doubt.

{21} Given that both Defendant and the driver had equal access to the gun, we agree with the Court of Appeals that the State needed something more than physical proximity to establish Defendant's control. However, unlike the Court of Appeals, we are persuaded that the State presented sufficient additional evidence to meet its burden. *See State v. Barber,* 2004–NMSC–019, ¶ 28, 135 N.M. 621, 92 P.3d 633 (holding, other than location of the drugs, State presented evidence establishing direct connection between drugs and accused, thereby creating inference of control); *Bauske,* 86 N.M. at 486, 525 P.2d at 413 (finding the defendant guilty of constructive possession of heroin when found in police car, in an eyeglass case left by defendant's wife, in part because the defendant had fresh needle marks and syringes were found in car they had been traveling in).

{22} The most important link between the gun and Defendant was the ammunition clip. The clip was sizeable, located on top of Defendant's seat, and Defendant had been sitting on it. The clip was easily accessible to Defendant and arguably more accessible to him than to anyone else. The clip was fully loaded and fit the gun located directly under Defendant's seat, directly linking the clip to the gun. The clip's principal value was its potential service to this particular gun. Defendant was clearly exercising control over the clip, arguably an exclusive control, by concealing it under his body where it could

be easily retrieved to reload the firearm. Control over the clip gives rise to a fair inference of control over the gun, at least in the particular context of this case.

{23} We acknowledge the presence of additional incriminating evidence. The beer bottle was located in a place so near to the gun under the seat that, arguably, Defendant could have been attempting to use the bottle in an unsuccessful attempt to hide the gun. In addition, his unusually aggressive behavior at the outset might suggest not only knowledge of the gun but also an intent to use it. *See Morales*, 2002–NMCA–052, ¶¶ 30–31, 132 N.M. 146, 45 P.3d 406 (indicating possession could be inferred from the presence of contraband in the car, located under a floor mat beneath where the defendant was seated, plus evidence of extreme measures taken by the defendant to flee). We also observe that the driver of the car could have claimed the gun as his own, but did not do so. *Cf. State v. Lamothe*, 738 So.2d 55, 57 (La.Ct.App.1999) (concluding evidence of possession was insufficient when the defendant's mother testified that she owned the car the defendant was driving, and that she had left the gun under the seat, and that he did not know it was there); *Woodall v. State*, 97 Nev. 235, 627 P.2d 402, 403 (1981) (concluding evidence of possession was insufficient when the defendant's companion acknowledged that the weapon belonged to him, and that the defendant did not know it was present).

{24} However, we must hold that these additional pieces of evidence, though helpful to a reasonable fact-finder, would not have been enough, by themselves, to prove control. Instead, the ammunition clip tips the balance in favor of the verdict. Unlike the Court of Appeals, we conclude that this one critical piece of evidence, the ammunition clip, was enough to create an inference of both knowledge and control, particularly when embellished by all the other pieces of incriminating evidence. Put another way, focusing on the presence of the ammunition clip, we conclude that the evidence, viewed most favorably to the State, necessarily does *not* support any "reasonable hypothesis of innocence," even though, as we have said

earlier, the State's burden no longer extends that far after *Brown*.

{25} Other states have determined there was sufficient evidence of constructive possession of a firearm by a felon based on similar facts, specifically with more than one person in the car. *See, e.g., United States v. Gorman*, 312 F.3d 1159, 1164 (10th Cir.2002) (holding sufficient connection or nexus existed between the defendant and a gun in a case of non-exclusive possession because the gun was found under the defendant's seat, was visible and retrievable by defendant, and a magazine of ammunition was hidden in the seat cover); *State v. Armentor*, 649 So.2d 1187, 1189–90 (La.Ct.App.1995) (finding sufficient evidence to support a conviction based on constructive possession when a pistol was found under the passenger seat where the defendant had been seated and fifteen to twenty rounds of ammunition, which matched the pistol, were found in the defendant's pants pocket); *Green v. State*, 489 P.2d 768, 768 (Okla.Crim.App.1971) (holding conviction for possession was supported by sufficient evidence when a firearm was found under the passenger seat where the defendant had been sitting, and the arresting officer observed the defendant trying to place something in the glove compartment which, when searched, yielded an ammunition clip matching the gun under the seat). We cite these cases for illustrative purposes only. We need not adopt their rationale as our own given the presence in this case of evidence, in addition to location, so incriminating to Defendant.

**Legality of the Search**

■ {26} Defendant argues that the warrantless search of the car was unconstitutional under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant challenges only the legality of the search regarding the beer bottle. However, because we reverse the Court of Appeals and affirm the sufficiency of the evidence to convict Defendant for possession of a firearm, the legality of the search and resulting seizure of that firearm is necessarily at issue.

In the interest of judicial economy, we decide these similarly situated issues together.

{27} At trial, Defendant filed a motion to suppress the evidence found during the search of the car. The parties agreed to conduct an evidentiary hearing concurrently with the trial. A motion to suppress evidence is a mixed question of law and fact. *State v. Vandenberg*, 2003–NMSC–030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We review the motion in two parts; first we review the factual analysis for substantial evidence and then we review the legal analysis *de novo*. *Id.* Since the trial court is in a better position to judge the credibility of witnesses and resolve questions of fact, the factual analysis should be viewed in a light favorable to the prevailing party. *Id.* ¶ 18.

{28} Defendant argues the search was unconstitutional because there were no exigent circumstances to justify a search without a warrant. Defendant points out that both he and the driver were already handcuffed and detained at the time the car was searched. Officer Hatch testified there was time to get a warrant, and conceded they did not attempt to attain consent to search the car because they believed it was legal to seize an object in plain view.

{29} The plain view doctrine generally allows an officer to seize an object in plain view, but only when the officer is legally allowed to be in the location from which the object can be seen. *State v. Williams*, 117 N.M. 551, 555–56, 874 P.2d 12, 16–17 (1994). In this case, the officer saw the gun in plain view from outside the car as the driver was being given a traffic citation, thus the requirements of the plain view doctrine are met. However, even with an object in plain view, an officer may not enter the car and seize the object, without either consent, a warrant, or exigent circumstances. *See State v. Gomez*, 1997–NMSC–006, ¶¶ 33–46, 122 N.M. 777, 932 P.2d 1; *Campos v. State*, 117 N.M. 155, 159, 870 P.2d 117, 121 (1994); *State v. Jones*, 2002–NMCA–019, ¶¶ 11–14, 131 N.M. 586, 40 P.3d 1030. New Mexico law departs from federal precedent on this issue. *Gomez*, 1997–NMSC–006, ¶ 35, 122 N.M. 777, 932 P.2d 1. Federal precedent allows for searches and seizures from a car without a warrant based on a bright line automobile exception to the warrant requirement. *Id.* ¶ 44. However, the Constitution of the State of New Mexico provides greater protection, requiring a warrant or the presence of exigent circumstances to remove evidence. *Id.* ¶ 45.

{30} The State argues that exigent circumstances were present. Exigent circumstances are defined as " 'an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property.' " *Id.* ¶ 39 (quoting *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986)). New Mexico courts have allowed police officers, while conducting an investigatory stop, to carry out a limited search of the car for weapons, if the officer has a reasonable belief the suspect may be armed and dangerous. *State v. Arredondo*, 1997–NMCA–081, ¶ 15, 123 N.M. 628, 944 P.2d 276, *overruled on other grounds by State v. Steinzig*, 1999–NMCA–107, ¶ 29, 127 N.M. 752, 987 P.2d 409; *State v. Flores*, 1996–NMCA–059, ¶¶ 17–18, 122 N.M. 84, 920 P.2d 1038. The circumstances leading to the search must be viewed objectively to determine whether the officer reasonably believed exigent circumstances existed, or whether a reasonable police officer could have believed so. *State v. Pierce*, 2003–NMCA–117, ¶ 15, 134 N.M. 388, 77 P.3d 292.

{31} As the Court of Appeals correctly emphasized, there must be a reasonable suspicion the suspect is both armed *and* dangerous. *Garcia*, 2004–NMCA–066, ¶ 28. An individual in a car with a weapon, by itself, does not create exigent circumstances. In New Mexico it is lawful for a non-felon to carry a loaded handgun " 'in a private automobile or other private means of conveyance.' " *Id.* (quoting NMSA 1978, § 30-7-2(A)(2) (2001)); *see also* N.M. Const. art. II, § 6 (protecting the right to bear arms). Because of that, "it would be anomalous to treat the mere presence of a firearm in an automobile as supporting a reasonable suspicion that the occupants are inclined to harm an officer in the course of a routine traffic stop." *Garcia*, 2004–NMCA–066, ¶ 28. Our courts have also held that an admission regarding the

presence of a firearm in the car, on its own, is not sufficient to justify further detention of a motorist. *In re Forfeiture of ($28,000.00)*, 1998–NMCA–029, ¶17, 124 N.M. 661, 954 P.2d 93. Therefore, the State was required to show more than just the presence of a gun in the car before the officers could seize it without a warrant.

{32} In this instance, we agree with the Court of Appeals that the State presented such additional evidence. Defendant's aggressive behavior at the inception of the traffic stop, and his initial refusal to return to the car, led to a reasonable belief that Defendant might be dangerous, thereby causing Officer Hatch to draw his weapon almost at the outset. When the officer later saw the gun, he was entitled to a reasonable suspicion that Defendant was both armed and dangerous. The officers searched the car and seized the gun, not as evidence of a crime, but in a reasonable effort to secure the scene. Under these facts, the officers were entitled to a reasonable, *limited* search of the car for weapons, even after the suspects had left the car. *Arredondo*, 1997–NMCA–081, ¶17, 123 N.M. 628, 944 P.2d 276 ("We believe that a limited vehicle search for weapons when an officer reasonably believes he may be in danger comports with Article II, Section 10 of the New Mexico Constitution....").

 {33} Although Officer Hatch searched the car under the mistaken belief that the plain view doctrine permitted him to do so, he also testified that he drew his gun due to Defendant's behavior and detained them both because of his concern for officer safety. We may uphold a search or seizure if the facts known to the officer, viewed objectively, would provide valid constitutional grounds for the officer's actions, even though the officer subjectively relied on a legally insufficient theory. *State v. Vargas*, 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App. 1995).

{34} Finally, Defendant also challenges the district court's failure to suppress evidence, the beer bottle found under Defendant's seat, which resulted in an open container conviction under Section 66–8–138. The Court of Appeals affirmed the district court's decision, finding that Defendant's ad-

mission to drinking was the fruit of a lawful entry into the car to seize the firearm. We agree and affirm Defendant's conviction for that offense as well.

**CONCLUSION**

{35} We reverse the Court of Appeals sufficiency-of-the-evidence determination and reinstate Defendant's conviction for being a felon in possession of a firearm. We affirm the Court of Appeals opinion upholding the open container conviction.

{36} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.