This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **NO. 31,222**

**BRANDON MAXWELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando Macias, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Office of C. J. McElhinney
C. J. McElhinney
Las Cruces, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

Defendant was convicted of aggravated driving while under the influence of intoxicating liquor (DWI). He appeals the denial of a motion to suppress challenging

the district court's determination that the traffic stop was justified as a community caretaking encounter. For the reasons that follow, we affirm.

**BACKGROUND**

At approximately 1:30 a.m. on February 25, 2010, Defendant pulled out of a parking lot associated with a Las Cruces bar. Officer Tamara Garay, who was patrolling that night, followed. As both vehicles proceeded east on Missouri Avenue, the officer saw Defendant weave noticeably within his lane at least twice. Defendant then made a right turn onto Locust Street, after which the officer saw him weave three or four more times within his lane. Officer Garay described the repeated weaving as at least two to three feet from side to side, which was significant enough to catch the officer's attention. Because of the pattern of erratic driving, the officer became concerned. She therefore initiated a traffic stop. When Officer Garay approached, she asked Defendant where he was coming from, whether he was okay, and if everything was all right. She then smelled an odor of alcohol, and Defendant admitted that he had been drinking. At that point, the officer began a standard DWI investigation, which led to Defendant's arrest and ultimate conviction.

**STANDARD OF REVIEW**

A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. In reviewing

a district court's rulings on a motion to suppress, "[we] review[] factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. In addition, we "indulge in all reasonable inferences in support of the district court's ruling and disregard all evidence and inferences to the contrary." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070.

**DISCUSSION**

"In New Mexico we have recognized that officers may stop a vehicle on a public road without probable cause or reasonable suspicion on the basis of a specific, articulable safety concern in their capacity as community caretakers." *State v. Ryon*, 2005-NMSC-005, ¶ 16, 137 N.M. 174, 108 P.3d 1032 (internal quotation marks and citation omitted). The question presented in this case is whether Officer Garay justifiably stopped Defendant's vehicle on the basis of such a specific, articulable safety concern.

Below, Officer Garay testified that she initiated the traffic stop out of concern for the driver's welfare based on her observations of repeated weaving within the lane. She explained that she did not know what, if anything, was wrong, but she knew from

experience that there might be a variety of possibilities, ranging from simple disorientation to a more serious problem, such as an acute medical condition.

We addressed an analogous situation in the case of *Apodaca v. State ex rel. Taxation and Revenue Department*, 118 N.M. 624, 884 P.2d 515 (Ct. App. 1994). In *Apodaca*, a police officer observed a motorcycle weaving within its lane of traffic. *Id.* at 625, 884 P.2d at 516. Although the driver of the motorcycle had not violated any traffic laws, the officer thought the driver might be injured or sick or that something else might be wrong. *Id.* He therefore initiated a traffic stop out of concern for the driver's welfare. *Id.* When he approached, he detected a strong odor of alcohol and other signs of intoxication, as a result of which he conducted a DWI investigation. *Id.* The driver challenged the validity of the stop. *Id.* The ultimate issue was whether the arresting officer had identified specific, articulable safety concerns that made the traffic stop reasonable. *Id.* at 626, 884 P.2d at 517. This Court observed that "[w]eaving like that described by the officer could well result from a driver's attempting to retain control of his motorcycle, or to resist the effects of drowsiness, illness, or a similar problem." *Id.* In light of these considerations, we held that the fact finder could properly determine that the officer had a reasonable basis to stop the motorcycle to ascertain whether the driver needed assistance. *Id.*

Officer Garay observed similar repeated weaving within the lane of traffic. And, like the police officer in *Apodaca*, Officer Garay also testified that her observations caused her to develop concerns about the driver's welfare. Just as the officer's observations supported a specific, articulable safety concern justifying a community caretaking stop in *Apodaca*, we similarly conclude that Officer Garay's observations and concerns justified the stop of Defendant's vehicle in this case.

Defendant attempts to distinguish *Apodaca* on the ground that he was driving a car, rather than a motorcycle. However, we do not find this to be a meaningful distinction. Regardless of the type of vehicle involved, repeated weaving within a lane of traffic may give rise to specific, articulable safety concerns based upon possible driver distress and potential endangerment of the vehicle occupants and the public at large.

Defendant also attempts to distinguish *Apodaca* on grounds that different streets are involved and that there is no evidence to indicate whether there were other vehicles or pedestrians on the road at the time Defendant was stopped. In our estimation, whether the weaving was observed on Eubank (as in *Apodaca*) or on Missouri and Locust is immaterial. And because *Apodaca* is silent with respect to the presence of other vehicles or pedestrians in the vicinity, the absence of such evidence

5

in this case cannot be regarded as a significant consideration. We therefore reject Defendant's attempts to distinguish this case.

We further understand Defendant to take issue with Officer Garay's subjective motivation for following his vehicle and initiating the stop. He suggests that Officer Garay's stated concern for his welfare was a pretext and that her actual interest was in pursuing a DWI investigation. However, Defendant's argument runs afoul of the standard of review. Because this Court must view the evidence in the light most favorable to the ruling rendered below, we cannot entertain Defendant's attacks on Officer Garay's credibility as a witness. *Ryon*, 2005-NMSC-005, ¶ 11.

Defendant also suggests that the traffic stop in this case should be deemed invalid because Officer Garay could not be said to have held an objectively reasonable belief that there was a need for immediate aid or assistance or protection from serious harm. However, this heightened standard applies specifically and exclusively to community caretaking encounters involving the emergency assistance doctrine. *See id.* ¶¶ 25-26. Because this case involves a community caretaking encounter pursuant to the public servant doctrine, the officer's conduct must be judged by a lower standard of reasonableness, which merely requires a specific and articulable concern for public safety. *Id.* ¶ 26 (distinguishing the public servant doctrine from the

6

emergency assistance doctrine, and describing the different standards applicable to each).  For the reasons previously stated, we conclude that this standard was satisfied.

Finally, Defendant suggests that upholding the district court's decision in this case "would radically change the community caretaker exception and . . . open the floodgates for police overreaching and intrusion" based on entirely legal and innocuous conduct.  We disagree.  In this case, as in *Apodaca*, the officer initiated the stop only after repeatedly observing erratic behavior, which gave rise to reasonable concerns for the welfare of the driver and/or the public at large.  This falls well within the established limits of the community caretaking doctrine and does not represent a departure.

**CONCLUSION**

For the foregoing reasons, we conclude that the stop was valid, such that the district court properly denied Defendant's motion to suppress.  We therefore affirm.

**IT IS SO ORDERED.**

 

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

7

**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**