This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                      **No. 31,512**

**BOBBY JOE WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Bobby Joe Williams appeals from his conviction for shoplifting over $500 and conspiracy to commit shoplifting over $500. He contends that there was insufficient evidence to support his conviction and that the district court erred in denying his motion for a mistrial based on prosecutorial misconduct during closing argument. We affirm.

**BACKGROUND**

On June 4, 2010, Defendant drove to a Target store in Farmington, New Mexico, with two people, identified at Defendant's trial as Rachel Lanier and Felix Martinez. Defendant's actions were recorded on a surveillance video, an edited version of which was played for the jury and admitted into evidence at Defendant's trial. Lanier exited Defendant's vehicle and entered the store by herself. Defendant then parked the vehicle, and Defendant and Martinez entered the store together.

Defendant, Martinez, and Lanier met up at various points in the store and appeared to be shopping together, at least to some degree. Lanier at some point joined Defendant and Martinez in the electronics department and placed an item Defendant was looking at in her cart. Defendant then looked at a universal remote control secured to a locking peg, which is a device designed to prevent theft of high-value items. Lanier forcefully removed the remote control from the locking peg and placed it in the cart while Defendant watched. Lanier later placed the remote control

packaging on a shelf in the sporting goods department in the presence of Defendant and with Martinez nearby. Defendant placed multiple items into Lanier's cart. Defendant helped Lanier select items in the sporting goods department, while Martinez waited nearby.

After spending almost thirty minutes in the store, Lanier pushed her cart past the checkout aisles and on to the snack bar, where she purchased a fountain drink. Lanier then pushed her fully loaded cart out through the automatic doors, having paid for nothing, other than her beverage. Martinez was with her the entire time. Defendant exited the store with another person, who paid for the items in her cart, approximately four minutes later. Defendant, Martinez, and Lanier left the parking lot together in Defendant's vehicle.

On June 5, 2010, a Target employee discovered the remote control packaging that Lanier had placed on a shelf in the sporting goods department. Valerie Simpson, a Target security department employee, reviewed surveillance video to determine who had taken the remote control. She ultimately determined Defendant, Lanier, and Martinez were involved in shoplifting various items. She calculated the value of the items in Lanier's cart at $918.73, including the remote control, a blu-ray player and an air mattress. Simpson contacted the police department with the information and

provided them with a copy of the edited surveillance video. The police were able to identify Defendant from the video, but were unable to identify Martinez or Lanier.

Defendant was charged by criminal information with one count of shoplifting over $500 and one count of conspiracy to commit shoplifting over $500. The case was tried before a jury on April 26, 2011. David King, the investigating police officer, and Valerie Simpson testified for the State. Simpson testified regarding her role in the investigation and regarding organized retail crime in general. She testified that Defendant, Martinez, and Lanier fit the profile of multiple-party shoplifters taking items for resale, rather than personal use. They entered the store separately, left separately, and met up on occasion. Defendant and Lanier appeared to select the merchandise while Martinez served as the lookout.

Defendant moved for a directed verdict at the close of the State's evidence. The district court denied the motion. Lanier then testified for the defense. She admitted to shoplifting at Target and identified herself in the video, but claimed she acted alone. She testified that Defendant gave her $300 to purchase some items for a fishing trip. She said Defendant did not participate in the shoplifting or know of her intentions. Lanier claimed that after Defendant was arrested, he contacted her, and she told him she had not paid for the items. Prior to Defendant's trial, Lanier did not tell the police her version of the events. Lanier admitted to having five prior charges for shoplifting.

At the conclusion of the State's evidence, Defendant moved for a directed verdict. The district court denied the motion. The jury was instructed that, to find Defendant guilty of shoplifting, the State had to prove the following elements beyond a reasonable doubt.

> 1. . . . [D]efendant took possession of merchandise owned by Target;
>
> 2. This merchandise had a market value of over $500.00[;]
>
> 3. This merchandise was offered for sale to the public in a store;
>
> 4. At the time he took this merchandise, . . . [D]efendant intended to take it without paying for it;
>
> 5. This happened in New Mexico on or about the 4[th] day of June[] 2010.

The jury was instructed that it could find Defendant guilty if he "helped, encouraged[,] or caused the crime to be committed." The jury was instructed that, to find Defendant guilty of conspiracy to commit shoplifting, the State had to prove beyond a reasonable doubt, that, among other things, "[D]efendant and another person by words or acts agreed together to commit shoplifting" and "intended to commit shoplifting[.]"

After the jury was instructed, the attorneys made their closing arguments. In closing, the prosecutor remarked on Defendant's failure to take any action to have Lanier identify herself and/or talk to the authorities following his arrest. Defendant objected and moved for a mistrial. The district court denied Defendant's request and

provided a curative instruction to the jury. The prosecutor continued his closing argument and did not comment further on Defendant's post-arrest silence.

The jury found Defendant guilty of shoplifting and conspiracy to commit shoplifting. Defendant filed a motion for a new trial arguing, among other things, that the district court should have granted a mistrial following the prosecutor's "highly prejudicial and inflammatory remarks" during closing argument. The district court denied the motion. Defendant filed a motion to reconsider that the district court denied. The district court sentenced Defendant to two concurrent terms of eighteen months of imprisonment, enhanced by four years for being a habitual offender.

**DISCUSSION**

Defendant makes two arguments on appeal. He contends: (1) the evidence was insufficient to support his conviction for shoplifting and conspiracy to commit shoplifting, and (2) the district court erred in denying his motion for a mistrial based on prosecutorial misconduct during closing argument. We review each argument in turn.

**A.    Sufficiency of the Evidence**

"[O]ur review for sufficiency of the evidence is deferential to the jury's findings." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. We review direct and circumstantial evidence "in the light most favorable to the guilty

verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). "So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *Id.* (internal quotation marks and citation omitted).

**1.     Shoplifting**

Defendant was convicted of felony shoplifting in violation of NMSA 1978, Section 30-16-20 (2006). In pertinent part, this statute defines the offense as "willfully taking possession of merchandise with the intention of converting it without paying for it[.]" Section 30-16-20(A)(1). Under our accessory statute, "[a] person may be . . . convicted of [a] crime as an accessory if he procures, counsels, aids[,] or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted[.]" NMSA 1978, § 30-1-13 (1972). The jury was instructed it could find Defendant guilty if he "helped, encouraged[,] or caused the [shoplifting] to be committed."

Defendant contends there was insufficient evidence to support his conviction for shoplifting because the State introduced neither direct nor circumstantial evidence

indicating he intended the crime to occur or knew about Lanier's plan. He argues his involvement "is only supported by speculation and conjecture." We disagree.

"[W]e have a duty to assure that the basis of a conviction is not mere speculation." *State v. Vigil*, 2010-NMSC-003, ¶ 19, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted). Here, the jury was properly instructed that its verdict "should not be based on speculation, guess[,] or conjecture." The jury was also instructed that "[w]hether . . . [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct[,] and any statements made by him." Based on the evidence presented, the jury did not have to speculate to find that Defendant helped, encouraged, or caused Lanier to shoplift more than $500 worth of goods. *See* § 30-1-13.

This Court has previously recognized that intent "is rarely subject to direct proof" and "may be prove[d] by circumstantial evidence." *State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820. The State presented evidence that Defendant drove Lanier to and from Target; assisted her with selecting items in the store; placed some items in the cart; and observed her removing the universal remote control from a locked peg and was in very close proximity when she removed it from its packaging that she left on the bottom shelf in the sporting goods department. In

8

addition, the State presented an interpretation of Defendant's actions that made his otherwise somewhat unusual behavior seem "perfectly logical, sensible[,] and thought-out." The jury heard testimony that the conduct of Defendant, Lanier, and Martinez revealed they were acting in concert, even though Defendant was not with Lanier when she walked past the checkout aisles and pushed her cart out the door. The jury heard Lanier testify that she acted alone, but it was within its province to disbelieve her testimony. *See State v. Foster*, 1999-NMSC-007, ¶ 42, 126 N.M. 646, 974 P.2d 140 ("[T]he jury has the privilege to believe or to disbelieve any testimony it hears." (internal quotation marks and citation omitted)), *abrogation on other grounds recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

It is not the appellate courts' role to "re-weigh the evidence to determine if there was another hypothesis that would support innocence[.]" *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. Nor is it our role to supplant the fact-finder's view of the evidence with our own. *See id.* Instead, we must "at all times" remain "mindful of the jury's fundamental role as fact[-]finder in our system of justice[.]" *State v. Gallegos*, 2011-NMSC-027, ¶ 15, 149 N.M. 704, 254 P.3d 655 (internal quotation marks and citation omitted). Mindful of our role, we conclude

there was sufficient evidence from which the jury could rationally find Defendant guilty of shoplifting.

**2.    Conspiracy to Commit Shoplifting**

Defendant was convicted of conspiracy to commit shoplifting in violation of NMSA 1978, Section 30-28-2 (1979), which defines the offense as "knowingly combining with another for the purpose of committing a felony within or without this state." Section 30-28-2(A). The jury was instructed that to find Defendant guilty of conspiracy the State had to prove beyond a reasonable doubt that, among other things, "[D]efendant and another person by words or acts agreed together to commit shoplifting" and "intended to commit shoplifting[.]"

Defendant contends there was insufficient evidence to support his conviction for conspiracy because the jury had to speculate that there was an agreement and intent. He also argues that even if the evidence was sufficient to establish a conspiracy, it was insufficient to establish it was a conspiracy to shoplift over $500 worth of merchandise. The State contends the same circumstantial evidence supporting the substantive charge, in particular, "coordinated activities captured on video," supports the conspiracy charge. The State also argues there was sufficient evidence from which the jury could find the conspiracy involved an agreement to shoplift more than $500 worth of goods.

10

We agree with the State. "In order to be convicted of conspiracy, the defendant must have the requisite intent to agree and the intent to commit the offense that is the object of the conspiracy." *State v. Trujillo*, 2002-NMSC-005, ¶ 62, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). The agreement "may be established by circumstantial evidence" and "may be shown to exist by acts which demonstrate that the alleged co-conspirator knew of and participated in the scheme." *Id.* Disregarding Lanier's testimony, there was sufficient circumstantial evidence from which the jury could find the requisite agreement and intent. The jury heard testimony that the actions of Defendant, Lanier, and Martinez revealed they were participating in the same scheme. In addition, the jury was able to make this determination for itself based on the surveillance video.

Simpson testified that the value of the items taken from Target totaled $918.73, as reflected on a receipt she prepared. The receipt, which was admitted into evidence, indicates seventeen items were stolen from Target, including a universal remote control ($149.99), a blu-ray player ($249.99), and an air mattress ($189.99). Defendant placed some items in Lanier's cart and pointed out other items that Lanier placed in her cart. In addition, Defendant was able to observe the items in Lanier's cart at all times. While he might not have known the exact value of those items, from the evidence of Defendant's active involvement in selecting numerous items and from

11

the ultimate proven values of the items, a rational jury could find the conspiracy involved an agreement to shoplift more than $500 worth of merchandise.

Defendant additionally argues that his conspiracy to commit shoplifting conviction should be overturned on the basis of a faulty jury instruction. Defendant argues that, because the conspiracy instruction "failed to include a monetary value of the items shoplifted, [the instruction] did not require the jury to find that [Defendant] and another conspired to commit felony shoplifting." In Defendant's view, including a particular sum in the jury instruction was significant because the monetary value of the shoplifted items dictates the level of the crime. *See* § 30-16-20(B) (indicating that the degree of the conviction, which depends on the values of the item(s) shoplifted, ranges from a petty misdemeanor to a second degree felony). The State rebuts this assertion by arguing that, because only one count of shoplifting was charged, it would have been unreasonable for any juror to believe that the conspiracy to shoplift referred to anything but that sum-specific charge. Additionally, the State notes that Defendant did not object to the instruction at trial.

Although we do not believe that Defendant's argument provides a convincing basis for reversal, Defendant failed to preserve his argument by objecting to the instruction before it went to the jury. *See* Rule 5-608(D) NMRA (explaining that "for the preservation of error in the charge, objection to any instruction given must be

sufficient to alert the mind of the court to the claimed vice therein, or, in the case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed"). Therefore, we decline further consideration of this argument. *See* Rule 12-216(A) NMRA (requiring parties to fairly invoke a district court ruling in order to preserve an issue for appellate review).

**B.      Prosecutorial Misconduct**

In his closing argument, the prosecutor commented on the fact that Defendant failed to take any action to have Lanier identify herself and/or talk to the authorities immediately after his arrest.  He said:

> When [Defendant] finds out about [the shoplifting] four days later, what
> would somebody do who is wrongly charged with a crime?  I know I'd
> go down and grab her and put her in the car and take her down to the
> station and say, Ms. Lanier, you need to tell these . . . .

Defendant objected and moved for a mistrial.  The district court sustained the objection, but denied Defendant's motion for a mistrial.  The court provided a curative instruction.

> Ladies and gentlemen, any reference to the defendant's actions or
> inactions that may imply that he was exercising his Fifth Amendment
> right, I am going to read that instruction to you again that I gave you
> earlier . . . .  You must not draw any inference of guilt from the fact that
> . . . [D]efendant did not testify in this case, nor should this fact be
> discussed by you or entered into your deliberations in any way.  Okay?

After the verdict, Defendant filed a motion for a new trial arguing, among other things, the district court should have granted a mistrial following the prosecutor's "highly prejudicial and inflammatory remarks" during closing argument. The district court denied the motion. In its amended order, the district court recognized this as a "relatively close case[,]" but concluded that "[t]he State's inappropriate comment on Defendant's Fifth Amendment right, where the statement was cut off by a defense objection followed by an immediate curative instruction given by the [c]ourt; did not serve to materially alter the trial or confuse the jury." Defendant filed a motion to reconsider that the district court denied. On appeal, Defendant contends the district court erred in denying his motion for a mistrial.

We review the denial of a motion for a mistrial for an abuse of discretion, recognizing "the power to declare a mistrial should be exercised with the greatest caution." *State v. Smith*, 2001-NMSC-004, ¶ 32, 130 N.M. 117, 19 P.3d 254 (alteration, internal quotation marks, and citation omitted). Our Supreme Court has explained:

> Because trial judges are in the best position to assess the impact of any questionable comment, we afford them broad discretion in managing closing argument. Only in the most exceptional circumstances should we, with the limited perspective of a written record, determine that all the safeguards at the trial level have failed.

*State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348 (citation omitted).

14

The district court concluded that the prosecutor's statement, quoted earlier, infringed upon Defendant's constitutional right to remain silent, but denied Defendant's motion for a mistrial because the statement "did not serve to materially alter the trial or confuse the jury." Because Defendant objected at trial, we must first determine whether the prosecutor's comment during closing argument was a violation of Defendant's Fifth Amendment right to remain silent. *See State v. Baca*, 89 N.M. 204, 205, 549 P.2d 282, 283 (1976) (recognizing that where comments about the defendant's pretrial silence can be directly attributed to the prosecutor, then they generally constitute plain error and require reversal). Improper comments attributed to a prosecutor include questions to a witness about the defendant's pretrial silence and the failure to make incriminating statements to family members. *State v. Martin*, 101 N.M. 595, 600, 686 P.2d 937, 942 (1984). As a result, we must now determine whether the actual comments made by the prosecutor clearly violated Defendant's Fifth Amendment right to remain silent.

The objectionable comment during closing argument was cut off by Defendant's objection and never completed. This comment clearly began by questioning what a defendant or anyone else would do shortly after being wrongly charged with a crime. It went on to start describing what the prosecutor stated that he would do, which was effectively to put Lanier "in the car and take her down to the

15

station and say, Ms. Lanier, you need to tell these [objection made to cut off further comment]." Although it is possible that the prosecutor's comment would have developed further to suggest that Defendant proceed to act in violation of his Fifth Amendment right to remain silent, the objection interrupted this possibility and it is not clear that such a violation would have actually been suggested to the jury. As a result, Defendant's objection served to cut off what appeared to be developing as a potential violation of Defendant's Fifth Amendment right to remain silent. It is clear that the district court recognized this concern and took action to remedy the potential error.

Under these circumstances, we determine that the district court properly acted within its discretion to sustain the objection, deny the motion for mistrial, and issue a curative instruction to disregard the prosecutor's questionable comments before they were fully developed. *See Sosa*, 2009-NMSC-056, ¶ 25 (giving the district court broad discretion to manage questionable comments at closing argument before declaring a mistrial). As a result, the court preempted the possibility of an improper comment that would have deprived Defendant of a fair trial by distorting the evidence and violating Defendant's Fifth Amendment rights. *Id.* ¶¶ 26, 27, 34 (indicating that our Supreme Court "reviewed over 30 years of appellate decisions regarding challenges to closing arguments" and noted "the common thread running through the

16

cases finding reversible error is that the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial"). This particular situation was cut off from developing into one of those "most exceptional circumstances" cases warranting reversal for a prosecutor's improper comments during closing argument. *See id.* ¶ 25.

**CONCLUSION**

We affirm Defendant's conviction for shoplifting over $500 and conspiracy to commit shoplifting over $500.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**