2001-NMCA-020

24 P.3d 816

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Floyd WYNN, Defendant–Appellant.**

**No. 20,957.**

Court of Appeals of New Mexico.

April 5, 2001.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Santa Fe, NM, Josephine H. Ford, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} Defendant appeals his conviction for aggravated battery on a household member. We reverse.

*Whether the State Proved a Touching or Application of Force*

{2} Defendant argues that the State was required to prove that he directly touched the victim's person or something attached to the victim's person. New Mexico defines aggravated battery against a household member as "the unlawful touching *or application of force* to the person of a house-

hold member with intent to injure that person or another." NMSA 1978, § 30–3–16(A) (1995) (emphasis added). In our view, the phrase "application of force" clearly addresses the situation in which the defendant does not touch the victim himself, but instead, sets in motion a series of physical events ultimately resulting in the application of force to the victim. Most obviously, an "application of force to the person" can occur without a direct touching when a defendant pulls the trigger of a gun, resulting in a violent chemical reaction generating a burst of high pressure gases which propel a bullet against or into the victim's person. *See State v. Ortega,* 113 N.M. 437, 440, 827 P.2d 152, 155 (Ct.App. 1992) (citing with approval *Stokes v. State,* 233 Ind. 10, 115 N.E.2d 442 (1953) (holding "unlawful touching" element of battery established by evidence that defendant fired gun and that bullet perforated victim's necktie, creasing victim's shirt)). We enforce a statute according to its plain meaning, unless to do so will lead to absurd or unreasonable results. *State v. Wyrostek,* 108 N.M. 140, 142, 767 P.2d 379, 381 (Ct.App.1988). Here, there was evidence that Defendant broke the kitchen window of the victim's apartment while the victim was standing in front of the window and that the victim was cut by a flying shard of glass. Applying the plain meaning of "application of force," we hold that Defendant's act of striking the window with sufficient force to propel the glass inward and against the victim constituted the application of force to the victim within the meaning of Section 30–3–16(A).

*Sufficiency of the Evidence that Defendant Intended to Injure the Victim*

{3} Defendant argues that the State did not come forward with sufficient evidence to establish beyond a reasonable doubt that Defendant intended either to apply force to the victim or to injure the victim. We agree.

■■■ {4} Aggravated battery is a specific intent crime. *State v. Fuentes,* 119 N.M. 104, 106, 888 P.2d 986, 988 (Ct.App.1994). Proof that Defendant unreasonably disregarded the victim's safety is insufficient to establish specific intent to injure. *Cf.* UJI 14–133 NMRA 2001 (defining criminal negli-

gence). To prove the specific intent required by Section 30–3–16(A), the State was required to prove that in striking the window Defendant subjectively intended the consequences of application of force to the victim and injury to the victim from that application of force. *See State v. Brown,* 1996 NMSC 073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (distinguishing general intent and specific intent crimes).

■■■ {5} In conducting substantial evidence review, we review the record, marshaling all evidence favorable to trial court's findings. If evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the trial court's findings, provided that such a view of the evidence is not inherently improbable. *Crownover v. Nat'l Farmers Union Prop. & Cas. Co.,* 100 N.M. 568, 571, 673 P.2d 1301, 1304 (1983). We determine whether the evidence supports any conceivable set of rational deductions and inferences that logically leads to the finding in question. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 13, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (noting that court conducting sufficiency of the evidence review does not attempt to scrutinize the reasoning process actually used by factfinder). We must be satisfied that the evidence was sufficient to establish the facts essential to conviction with the level of certainty required by the applicable burden of proof. *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (noting that *Jackson* requires consideration of beyond a reasonable doubt standard in determining sufficiency of evidence in criminal case); *see also* 2A Charles Alan Wright, *Federal Practice and Procedure: Criminal* § 467 (3d. ed.2000) (noting minimal support for proposition that standard for sufficiency of evidence is same in civil and criminal cases and ultimate rejection of this view by Supreme Court in *Jackson*). To support a conviction under a beyond a reasonable doubt standard, the evidence and inferences drawn from that evidence must be sufficiently compelling so that a hypothetical reasonable factfinder could have reached "a subjective state of near certitude of the guilt of the accused." *See Jackson,* 443 U.S. at 315, 99 S.Ct. 2781.

{6} Defendant offered the only direct testimony regarding his intent: Defendant denied intending to harm the victim. The trial court was not required to believe Defendant's testimony that he did not intend to hurt the victim. *E.g., State v. Durant,* 2000–NMCA–066, ¶ 15, 129 N.M. 345, 7 P.3d 495. No New Mexico case has squarely addressed the issue of how the factfinder's disbelief of a criminal defendant's testimony is factored into substantial evidence review. In the worker's compensation context, we have recognized that "[a] finding that the testimony of a witness is not credible does not amount to a finding that the opposite of that witness's testimony is true." *Varbel v. Sandia Auto Electric,* 1999–NMCA–112, ¶ 21, 128 N.M. 7, 988 P.2d 317. *Varbel* is consistent with cases from other jurisdictions rejecting the proposition that a factfinder's disbelief of a criminal defendant's testimony can substitute for affirmative proof of the state's case. *State v. Coleman,* 14 Conn.App. 657, 544 A.2d 194, 202 (1988) (holding that jury not permitted to infer from disbelief of defendant's testimony that facts denied by defendant are true); *Commonwealth v. Scott,* 409 Pa.Super. 313, 597 A.2d 1220, 1223 (1991) (holding that trial court's conclusion that defendant's testimony was "self-serving" no substitute for proof); *State v. West,* 844 S.W.2d 144, 148 (Tenn.1992) ("Although the jury is permitted to disbelieve the defendant's testimony, it may not construct a theory based on no evidence at all."); *United States v. Aulicino,* 44 F.3d 1102, 1114–15 (2d Cir.1995) (observing that normally, discredited testimony is not sufficient to support drawing opposite conclusion). We see no principled basis for not applying *Varbel* to the testimony of criminal defendants; and, therefore, we hold that the trial court's rejection of Defendant's testimony denying the intent to harm the victim did not justify a finding beyond a reasonable doubt that the opposite of Defendant's testimony was true: *i.e.,* that Defendant intended to harm the victim when he struck the window.

{7} There being no direct testimony supporting the trial court's finding that Defendant acted with the specific intent to harm the victim, we must determine whether there was sufficient circumstantial evidence to support a finding of intent. *Durant,* 2000–NMCA–066, ¶ 15, 129 N.M. 345, 7 P.3d 495.

{8} The victim was the State's only eyewitness; she testified to the following facts. Defendant is the victim's ex-husband. They have three children. On July 31, 1998, Defendant repeatedly called the victim at work explaining that he wanted to meet with her and the children so that he could say goodbye. To stop Defendant from calling her at work, the victim promised to bring the children to a park after work. The victim had no intention of keeping the appointment. After work she picked up the children and went home. She left the two older children with Defendant's sister, Gina, who lived in a neighboring apartment.

{9} The victim heard a knock on the door. She did not want to talk to Defendant, so to avoid answering the door and revealing her presence, the victim phoned Gina and asked Gina to look out and see who was knocking on the victim's door. Gina told the victim it was Defendant. Defendant knocked on the bedroom windows. The victim went to the kitchen window, pulled aside the curtains and confronted Defendant, telling him to leave. Defendant told the victim to open the door and let him in. She refused. Defendant gestured with his fist indicating that he was going to break the window. The victim backed away from the window and picked up the phone. She told Defendant that she would call the police if he broke the window. Defendant responded that if the police came, he would die because the police would kill him. The victim was moving back toward the window when Defendant hit the window. The victim was a little over a foot from the window at the moment Defendant struck the window with his fist. She was cut on her face by a shard of glass.

{10} Defendant climbed through the approximately three-foot by three-foot window. The victim ran outside, calling for Gina. Gina came to the door of her apartment, saw that the victim was bleeding and pushed her into Gina's apartment. Defendant followed the victim out of her apartment and into Gina's apartment. Defendant did not threaten or

strike the victim; instead, he showed the victim his own wounds and left.

{11} The victim's testimony that she was a little over a foot away from the window when Defendant struck the window is the State's strongest evidence supporting the theory that Defendant intended to harm the victim by causing the glass to cut her. However, the victim also testified that Defendant did not threaten her prior to smashing the window and that after he smashed the window, Defendant did not threaten her or attempt to harm her. The trial court was not entitled to disregard undisputed relevant evidence. *State v. Lovato,* 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct.App.1991). There was no evidence pinning down exactly where Defendant hit the window or where the point of impact was in relationship to the victim's face. Further, the State failed to provide evidence of the layout of the kitchen. Without such evidence the trial court would not have been able to tell whether the victim moved out of Defendant's line of sight when she moved away from the window to reach for the telephone. While the victim's proximity to the window was a significant piece of circumstantial evidence, without further corroborating circumstantial indicia of intent, *see State v. Pabst,* 268 Kan. 501, 996 P.2d 321, 329 (.2000) (listing factors from which premeditation may be inferred, including factors such as nature of weapon used and threats and declarations before and after occurrence), no reasonable factfinder could have concluded that the inference of intent was sufficiently compelling to establish intent to harm beyond a reasonable doubt.

## CONCLUSION

{12} We reverse Defendant's conviction for aggravated battery on a household member. We remand for entry of an amended judgment and sentence dismissing with prejudice the charge of aggravated battery on a household member.

{13} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge, CYNTHIA A. FRY, Judge.