This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            NO.  32,374

**MICHAEL PAUL ASTORGA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

{1}     Michael Astorga (Defendant) appeals his convictions for the second-degree murder of Candido Martinez, tampering with evidence, and possession of a firearm by a felon. The State concedes that the tampering conviction should be reversed. Having reviewed applicable cases cited by the parties, we agree and reverse Defendant's conviction on that charge. Finding no error with Defendant's remaining convictions, we affirm the district court.

{2}     Defendant raises six issues, which boil down to three assertions for purposes of this Opinion:  (1) substantial evidence, including the introduction of conflicting prior statements by various witnesses, did not support the verdict; (2) the district court erred by admitting evidence that Defendant was arrested in Mexico; (3) the jury should have been instructed on self-defense and voluntary manslaughter. The parties are familiar with the facts and, for the sake of brevity, in this memorandum opinion, we present only such facts as are needed for our discussion of the issues. Defendant has raised other issues that we adjudicate in a separate opinion.

**I.      DISCUSSION**

**A.      Substantial Evidence**

{3}     Our standard of review requires us to review "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. We view the evidence

in the light most favorable to supporting the guilty verdict and resolve all conflicts and indulge all permissible inferences in favor of upholding that verdict. *Id*. Reweighing facts, searching for inferences supporting a finding contrary to the verdict, or substituting our judgment for that of the jury is not part of our review. *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285. After looking at the evidence in the light most favorable to the verdict, we ask whether any rational trier of fact would have found the essential elements of the crime to have been proven beyond a reasonable doubt. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In our evaluation, we do not look for evidence "to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Graham*, 2005-NMSC-004, ¶ 13 (internal quotation marks and citation omitted). Instead, "[w]e must be satisfied that the evidence was sufficient to establish the facts essential to conviction with the level of certainty required by the applicable burden of proof." *State v. Wynn*, 2001-NMCA-020, ¶ 5, 130 N.M. 381, 24 P.3d 816.

**B.      Second Degree Murder Verdict**

{4}      The jury found Defendant guilty of second-degree murder in violation of NMSA 1978, Section 30-2-1(B) (1994) and guilty of possession of a firearm by a felon in violation of NMSA 1978, Section 30-7-16 (2001). To satisfy the elements of these offenses, the State had the burden of proving that Defendant killed Martinez without lawful justification, knowing that his actions created a strong probability of

3

death, and that Defendant possessed and used a firearm in commission of that killing. UJI 14-211. Because no one testified that they saw Defendant shoot Martinez, all the evidence that the State presented was circumstantial. Our Supreme Court has "emphasized that circumstantial evidence alone can amount to substantial evidence." *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641; *see also State v. Tovar*, 1982-NMSC-119, ¶ 12, 98 N.M. 655, 651 P.2d 1299 (stating that "substantial evidence, even if circumstantial, supports the conviction.").

{5}     As explained below, we determine that the circumstantial evidence presented at trial is sufficient to support the verdict. The evidence supporting the guilty verdict includes: (1) circumstances of the shooting, (2) Defendant's motive for shooting Martinez through testimony that the argument between the two men concerned a long-festering family feud over a car, and (3) Defendant's post-incident conduct as evidence of consciousness of guilt.

**1.     The Circumstances of the Shooting**

{6}     Although Defendant argues, and we agree, that the testimony presented regarding the circumstances of the shooting present a conflicting and somewhat inconsistent set of facts, the jury's role is to resolve just such situations. It has long been the province of the jury to resolve conflicting statements attributed to witnesses. *Staab v. Raynolds*, 1888-NMSC-010, ¶ 5, 4 N.M. 603, 17 P. 136; *State v. Kelly*, 1921-NMSC-073, ¶ 51, 27 N.M. 412, 202 P. 524 (holding that, even in light of

4

contradictory or false statements, it is still the province of the jury to evaluate the weight and veracity of a witness's testimony). Additionally, when presented with a variety of statements, theories, and perceptions to choose from, the jury is free to reject a defendant's version of the facts. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 45, 150 N.M. 654, 265 P.3d 705 (acknowledging that a jury is fee to reject the defendant's version of the facts). We will not "invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting [our] judgment for that of the jury." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (quoting *State v. Lucero*, 118 N.M. 696).

{7}     Despite whatever inconsistencies exist in the testimony of the State's witnesses, the testimony does consistently establish that Defendant was standing along a line representing the trajectory of the bullet that killed Martinez when the fatal shot was fired, that Defendant had a gun in his hand, and that Defendant left the scene in a car near which he was standing immediately after the gunshot that killed Martinez. Ray Maez and Rudy Contreras testified that the sound of the gunshot came from the direction of Defendant's car. Maez testified—no fewer than four times—that based on his perceptions of the incident, Defendant shot Martinez. Contreras testified that he saw Defendant at his car with a gun in his hand immediately prior to the shooting, and told Martinez as much immediately prior to Martinez getting out of the truck and

verbally accosting Defendant from behind the Volvo, which was directly across the street from Defendant. This position behind the Volvo is where Contreras found Martinez's body after the gunshot. Maez testified that Defendant had retrieved what Maez thought was a gun from his car and then walked toward Martinez before the shot. Luis Vera heard the shot and saw someone run across the street from where Martinez had been hit, get in Defendant's car, and leave. Contreras testified that Defendant's car passed him immediately after Martinez had been shot while it was leaving the scene. He also testified Defendant was driving. Expert testimony established that the line representing the trajectory of the fatal bullet corresponds with the line between Defendant and Martinez as established by the three eyewitnesses around the time they heard the shot fired.

**{8}** The sum total of this evidence could be assembled by the jury and supported the guilty verdict. Although we acknowledge there were some inconsistencies in the testimony given, the State vigorously pursued most of the conflicts between the witnesses' many statements, and Defendant fully and vigorously cross-examined the witnesses. Some of the witnesses were openly reluctant to testify against the Defendant and recanted prior statements when they were on the stand. As we discuss further below, the introduction of inconsistent statements of many of these witnesses for impeachment purposes presented admissible, but not substantive, evidence. *See*, *e.g.*, *State v. Lopez*, 2011-NMSC-035, ¶ 15, 150 N.M. 179, 258 P.3d 458. Further,

6

nowhere during the trial did Defendant seek to exclude any of the conflicting substantive or impeachment evidence presented during the trial about which he now complains.

**{9}** The jury had a variety of statements, perceptions, and theories to choose from, and we see sufficient basis for correlation between the witnesses' testimony and the guilty verdict to present no need for us to short-circuit the jury's proper function as fact finder. *See State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (holding appellate courts are deferential to a jury's finding).

**{10}** Defendant insists, without citation to facts in the record, that we should conclude that it was impossible for him to have fired at Martinez from across the street because the shell casing found at the scene could not have landed where it was found following such a shot. Defendant's assertion that it was physically impossible for him to have shot Martinez is a theory, which the jury apparently rejected. *See Cabezuela*, 2011-NMSC-041, ¶ 45 (acknowledging that the jury is free to reject the defendant's version of the facts). The testimony of Contreras, Maez, and Vera placed Defendant across the street and approaching the Volvo prior to the shot being fired, and running from the Volvo to Defendant's car after the shot was fired. The State's expert testified that, owing to an ejected cartridge bouncing and "people going through the scene," the location of the casing "doesn't lend itself to giving us a lot of physical evidence to say where the gun was." The State's expert also proffered the theory that the fatal shot

7

came "across the car" to where Martinez was standing at the time of the fatal shot. Combining the eyewitness' testimony with the expert's theory, the trajectory of the shot could have logically aligned with Defendant's car across the street where witnesses placed Defendant contemporaneously with the shooting. It is the jury's responsibility to resolve any discrepancies as to where on that line Defendant might have stood. *See State v. Apodaca*, 1994-NMSC-121, ¶ 5, 118 N.M. 762, 887 P.2d 756 ("Only the jury may resolve factual discrepancies arising from conflicting evidence."). The evidence supports the jury's finding that Defendant was armed, that he was standing somewhere within the trajectory of the fatal bullet, and that the single shot fired resulted in Martinez's death.

**2.     Evidence Concerning Defendant's Post-Shooting Conduct**

{11}     The jury's verdict was also supported by evidence of Defendant's conduct following the shooting. Our inquiry into the evidence of Defendant's post-shooting conduct is two- fold. We must first address whether the district court erred in admitting evidence of Defendant's arrest in Mexico. On this point, Defendant argues that such evidence was "highly prejudicial." Second, we must add any admissible evidence of Defendant's post-shooting conduct to our analysis and determine whether the total evidence is sufficient to support the verdict. On this issue, Defendant argues that the evidence of his other post-shooting conduct is no more than "irresolvably ambigu[ous]."

{12} Defendant argues on appeal that the district court's admission of evidence of his arrest in Mexico was error because it was "highly prejudicial." During trial, Defendant vigorously argued against allowing evidence of his arrest being submitted to the jury. Once evidence of Defendant's flight to Mexico was admitted, the State argued that Defendant was arrested in Mexico on a warrant related to the Martinez shooting, and that the evidence of the Mexican arrest was part of a continuum of conduct that would show consciousness of guilt. The district court agreed that the flight testimony was prejudicial, but concluded that its probative value was not outweighed by prejudice. All parties agreed that mention of a separate murder case, in which Defendant was implicated, in reference to the evidence of flight would be extremely prejudicial, and the district court allowed testimony of the Mexico arrest only so far as the State agreed to omit any mention of the other murder case. Defense counsel confirmed to the district court that the State did not transgress this proscription.

{13} Admission of evidence is reviewed for an abuse of discretion. *Apodaca*, 1994-NMSC-021, ¶ 23. The admission of evidence of other acts that are consistent with consciousness of guilt must be done with care by the district court because of its tendency to permit misuse by the jury or to be unduly prejudicial. *State v. Ruiz*, 1995-NMCA-007, ¶ 12 119 N.M. 515, 892 P.2d 962 (holding that evidence of other acts is admissible to prove consciousness of guilt under Rule 11-404(B) NMRA. However,

"[t]he fact that competent evidence may tend to prejudice [the] defendant is not grounds for exclusion of that evidence. The question is whether the probative value of the evidence was outweighed by its prejudicial effect." *State v. Hogervorst*, 1977-NMCA-057, ¶ 46, 90 N.M. 580, 566 P.2d 828. Flight evidence, such as adopting an alias and fleeing to Mexico, is admissible to show consciousness of guilt. *State v. Gibson*, 1992-NMCA-017, ¶ 33, 113 N.M. 547, 828 P.2d 980. Similarly, absconding from supervision is evidence from which it is proper to infer consciousness of guilt. *Id.* ¶ 34 ("The jury could properly conclude that only the strongest of motives would have induced [the d]efendant to risk re-incarceration by breaching the conditions of his parole.").

{14} This evidence could properly be used to create an inference of consciousness of guilt, and we disagree with Defendant's assertion that the district court's ruling to allow evidence of Defendant's arrest in Mexico was against the logic and circumstances of the case. Although this evidence was prejudicial, its probative value was not outweighed by that prejudice. The district court and the State carefully limited the testimony so as not to include any unfairly prejudicial information. Defendant's argument that the decision to admit the evidence was error because he fled not because of the Martinez shooting, but because of another murder investigation, is unpersuasive. In order to successfully argue that theory, Defendant would have had to open the door to evidence concerning the other murder, which all parties agreed

would have been extremely prejudicial and against which Defendant vigorously argued during trial.

{15}     Defendant also asserts that he was unfairly placed in an untenable position by having to forego cross-examination of the officer who arrested him in Mexico because he asserts cross-examination would have opened the door to testimony of another murder. We are unpersuaded by this argument. Defendant chose not to exercise his right to cross-examine the arresting officer and did so of his own volition. *See State v. Gonzales*, 1992-NMSC-003, ¶ 20, 113 N.M. 221, 824 P.2d 1023 (concluding that the defendant's decision not to exercise his right to cross-examination was a trial tactic, as he was not impeded in any way by the state) *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, 306 P.3d 426.The decision not to cross examine does not negate a defendant's right to present a defense. *See State v. Ervin*, 2008-NMCA-016, ¶ 39, 143 N.M. 493, 177 P.3d 1067 (concluding that the defendant was not deprived of his right to present a defense where he had "ample opportunity to cross-examine [the witness,] . . . yet chose not to do so"); *see also State v. Massengill*, 1983-NMCA-001, ¶ 9, 99 N.M. 283, 657 P.2d 139 (stating that the defendant's decision not to cross-examine witness during preliminary hearing was a tactical decision). He is bound by his tactical decision, and cannot assert it as error now. This is particularly true in light of defense counsel's refusal of the district court's invitation to make a proffer of the evidence he would try to elicit during cross-examination. He

similarly refused to attempt a cross-examination of the witness outside the presence of the jury to determine if it was possible to cross-examine the witness without broaching the subject of the other murder. We therefore conclude that the district court's decision to admit evidence of Defendant's arrest in Mexico was not error.

**3. Other Post-Shooting Conduct**

{16} We find Defendant's assertion that the evidence of his post-shooting conduct is "irresolvably ambiguous" to be without merit. His argument for irresolvable ambiguity is hinged on the theory that flight can often coincide with innocence. While this is true, he also concedes that courts require more than evidence of flight to prove guilt. This case contains just such evidence; Defendant's flight from the scene of the shooting is not the only evidence that gives rise to a permissible consciousness of guilt inference. In addition to flight evidence, the State proffered evidence that Defendant admitted to getting into a fight on the day Martinez was killed, that Defendant moved to a remote location under an assumed name, and that Defendant absconded to Mexico, again under an assumed name. We therefore reject Defendant's irresolvable ambiguity argument.

{17} On the day after the shooting, Defendant asked his father-in-law for advice about whether to turn himself in, revealing that he had been in a fight the night before "and I won[.]" The State impeached testimony of Defendant's father-in-law, in which he claimed Defendant had not said anything about severely injuring someone during

12

the fight, using a prior statement given to an investigator in the case. The day after Defendant spoke with his father-in-law, Defendant moved out of his residence and visited his probation officer for the last time. After Defendant failed to appear at subsequent appointments, the probation officer issued a warrant for his arrest for absconding from supervision. Defendant rented a house two months later in a remote location using an assumed name. Five months after that, Defendant was arrested in Mexico while using another assumed name.

{18}     The evidence supports the jury's conclusion that Defendant killed Martinez without lawful justification, knowing his acts created a strong probability of death or great bodily harm to Martinez. NMSA 1978, § 30-2-1 (1994); UJI 14-211 NMRA. The State proffered evidence that Martinez and Defendant had an argument that Martinez instigated, walked away from, and rejoined a few minutes later. The evidence shows that only one shot was fired, that Defendant was standing somewhere along the line representing the trajectory of the fatal bullet when that shot was fired, and that a jury could properly infer Defendant's consciousness of guilt from his post-shooting behaviors. Defendant attacks the circumstantial nature of the State's case by pointing to the lack of testimony putting him in any precise location, putting a gun in his hand, or indicating he pulled the trigger; in short, he argues that the evidence should have been awarded less weight than the jury evidently gave it. These attacks are not enough to overturn the conviction on appeal. *See State v. Fuentes*, 2010-

NMCA-027, ¶ 17, 147 N.M. 761, 228 P.3d 1181 (stating that attacking the credibility of witnesses and de-emphasizing evidence supporting the defendant's guilt does "little to demonstrate that the evidence submitted at trial was insufficient to convict [the d]efendant of the offense charged[,]" and instead "highlights the all-important role of the jury").

{19} In addition to evidence of motive, the incident, and consciousness of guilt, the jury also received evidence that Defendant was on probation for a felony and possessed a gun at the time of the shooting. Thus, we conclude that the circumstantial evidence the State proffered, viewed in a light most favorable to the verdict, was sufficient to support the jury's decision.

**B.      Jury Instructions for Self-Defense and Manslaughter**

{20} Defendant asserts that the district court's rejection of jury instructions on self-defense and manslaughter was erroneous. Our standard of review is de novo. *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438.

**1.      No Evidence Supported a Self-Defense Instruction**

{21} Giving a self-defense instruction must be justified by sufficient evidence on every element of self-defense. *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170. The elements are that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *Id.* (internal quotation

marks and citation omitted). Reasonableness is judged by an objective standard, focusing on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant. *Id.* (citing *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477). If reasonable minds could differ as to all elements of the defense, the instruction should be given. *See State v. Branchal*, 1984-NMCA-063, ¶ 8, 101 N.M. 498, 684 P.2d 1163. The circumstances at the time deadly force was used by the defendant, and not at some earlier point, are the facts relevant to deciding whether a defendant believed that deadly force was required. *Rudolfo*, 2008-NMSC-036, ¶ 18. We do not search the record to find support for a party's arguments. *State v. Soutar*, 2012-NMCA-024, ¶ 39, 272 P.3d 154 (referencing rule that appellate courts will not search the record where the defendant fails to provide appropriate transcript references). We therefore address only the facts that, according to Defendant, support those elements of self-defense.

{22} Defendant first contends that he was put in fear by the unexpected arrival of three men—Martinez, Contreras, and Prieto—who had been using drugs and who were "apparently acting in concert." Defendant asserts that he was "completely vulnerable" when these men arrived, and in support of this assertion, points to the fact that the altercation took place at night and that Defendant was laying underneath his van when Martinez approached. Defendant's argument that he feared these three assailants hinges on all three men exhibiting hostility toward Defendant. Defendant

has not identified any evidence to indicate that Contreras or Prieto was exhibiting any aggression toward Defendant; only Martinez was being verbally aggressive towards Defendant. In fact, at the time that the fatal shot was fired, Contreras was in his truck and Prieto was returning to his vehicle. We look to the time of the shooting alone to determine if Defendant was in fear of immediate death or great bodily harm, *Rudolfo*, 2008-NMSC-036, ¶ 18, and Martinez was alone in his verbal altercation with Defendant at the time the shot was fired. As such, Defendant's multiple assailant theory fails.

**{23}**    Defendant also argues that Prieto's handing Martinez a phone "may have appeared" to be Martinez arming himself and that Martinez's statement about living and dying as a "gangster" could have been viewed as an escalation from a verbal to a physical altercation. In support of these assertions, Defendant points to *State v. Sandoval*, 2011-NMSC-022, ¶ 19, 150 N.M. 224, 258 P.3d 1016, where our Supreme Court found sufficient evidence to support a self-defense instruction as to a victim who "looked as if he were searching for something" in the back of the car in which he rode with two other assailants. Defendant asks us to liken the exchange of a cell phone between Prieto and Martinez during a verbal altercation to the facts in *Sandoval*. We decline to do so. In *Sandoval*, the man who appeared to be searching for something was a passenger in a car; that car had driven the defendant's car off the road, and contained two individuals who engaged in an altercation involving gunfire

16

with the defendant, at least one of whom was pointing a gun at the defendant. *Id.* ¶¶ 5-6. Although the dispute in which the two men were embroiled had gone on for five years, Defendant does not point to any evidence suggesting that the dispute had ever resulted in violence. There is no evidence that any physical contact occurred previously between Martinez and Defendant. Defendant does not point us to any evidence that Martinez threatened Defendant with physical harm, or that the altercation escalated beyond a verbal exchange prior to the shooting.

{24}     Defendant also correctly points out that he need not testify in order to make the showing of fear necessary for a self-defense instruction. He does, however, have to present some evidence from which a jury could infer his fear. *See State v. Duarte*, 1996-NMCA-038, ¶ 7, 125 N.M. 553, 915 P.2d 309. As enumerated above, he failed to do so. In fact, nothing but counsel's arguments support the notion that Defendant was in fear of Martinez. Defendant has not pointed us to anything in the record. There is no evidence in the record that Martinez appeared to be armed or that Defendant feared death or great bodily harm from Martinez. We therefore conclude that there was no attack from Martinez that an objectively reasonable person, acting under the same circumstances as Defendant, would believe required the use of deadly force.

**2.     No Evidence Supported a Voluntary Manslaughter Instruction**

{25}     Defendant asserts error in the district court's refusal to issue an instruction on voluntary manslaughter, asserting that the jury could conclude Defendant was in fear

17

of Martinez, but that he acted unreasonably in using deadly force to protect himself. This theory suffers from the same lack of evidence as the self-defense instruction. In order to be entitled to a voluntary manslaughter instruction, the defendant must be under the influence of "an uncontrollable fear of death or great bodily harm caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense." *State v. Melendez*, 1982-NMSC-039, ¶ 9, 97 N.M. 738, 643 P.2d 607 (internal quotation marks and citation omitted). Put another way, Defendant need not have acted reasonably when he killed, but he must have acted out of fear of death or great bodily harm. *See Rudolfo*, 2008-NMSC-036, ¶ 17. As explained above, there was no evidence to support the conclusion that Defendant acted out of fear. Defendant's argument suffers from an utter lack of evidence, and we affirm the district court's denial of the tendered instruction.

## II.     CONCLUSION

{26}     The State having conceded the invalidity of Defendant's conviction for tampering with evidence, we reverse that conviction and order that the charge be vacated and dismissed. Defendant's arguments concerning whether he was present at Ms. Martinez' deposition or the culling of jury members for cause is resolved in a separate opinion filed herewith. Based on the foregoing, we conclude that Defendant's remaining convictions were supported by properly admitted evidence sufficient to allow a jury to find him guilty beyond a reasonable doubt. There was no error in

allowing evidence concerning Defendant's arrest in Mexico. There was also no reason to give jury instructions on self-defense or voluntary manslaughter. Finding no error with regard to these arguments, we affirm the district court.

{27}     **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**M. MONICA ZAMORA, Judge**