This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                          NO. A-1-CA-35967

**MICHAEL DALTON WALDROP,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. DeLaney, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

**{1}** Defendant Michael Dalton Waldrop appeals his convictions for intimidation of a witness, in violation of NMSA 1978, Section 30-24-3(A)(3) (1997), and aggravated battery against a household member (great bodily harm), in violation of NMSA 1978, Section 30-3-16(C) (2008, amended 2018), on the ground that the convictions are not supported by sufficient evidence. We affirm Defendant's conviction for intimidation of a witness but reverse Defendant's conviction for aggravated battery against a household member.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts of the case, we limit our recitation of the facts to those needed for clarity and to adequately address the issues on appeal.

**{3}** Defendant's wife (Victim) testified at trial as follows. In the summer of 2015, things were rocky between Defendant and Victim because Defendant found out that Victim was having an affair. After weeks of Defendant acting "all over the place" and being "volatile," on July 10, 2015, Victim gathered her personal items from their home and attempted to leave Defendant. As she was moving her clothing from the bedroom to the living room, Defendant poured gasoline on the clothes and tried to light them with a flamethrower. Victim thought Defendant was trying to light her clothing on fire because he was mad about her affair.

**{4}** A week later, on July 16, 2015, Defendant received a text from the wife of the man with whom Victim was having the affair. Defendant started yelling at Victim and followed her into their bedroom where he handcuffed Victim to a bar in the closet and repeatedly hit and kicked her. While Victim was still handcuffed, Defendant directed her to get on the bed, ripped and removed her clothes, and forcibly pierced her private parts with a needle. He inserted body jewelry in the holes. Defendant threatened to shoot Victim if she did not stop screaming, and he hit her in the head with a gun.

**{5}** Victim felt sick later that night and told Defendant that she should go to the hospital. Defendant said they could not go to the hospital because if they did, the State would take away his towing warrants for domestic violence and that would mean the loss of their only source of income.

**{6}** The following day, Victim continued to feel sick and called her stepmother, who was a nurse in Las Cruces, to examine her injuries. At Defendant's direction, Victim told her stepmother that she had been in a four-wheeler accident. Victim's stepmother examined Victim's injuries and determined that Victim needed to go to the hospital. As Victim was getting into her stepmother's car, Defendant said what sounded like, "Don't fuck this up." When asked why she did not contact the police the day of the alleged beating and body piercing, Victim responded that she was afraid of what Defendant might do, and that while she was in the closet, Defendant

3

said that he did not have a problem taking out cops or anyone else who might try to help her. Defendant told her that he would rather see her dead than with anyone else.

{7} The sexual assault nurse examiner, Sofia Osollo (the SANE), who examined Victim also testified at trial, and the entirety of her report was admitted into evidence without objection. During the course of the examination, the SANE asked Victim about prior injuries. Victim responded that she had some bruises because Defendant had strangled, hit, slapped, and kicked her the week before. At trial, the SANE was asked to look at a number of photos of Victim, three of which showed bruising on Victim's neck. When asked about these photos, the SANE testified that there were "finger-like prints" on Victim's upper neck, just below the mandible. She indicated that the color and extent of bruises depends on a variety of factors but provided no testimony as to whether the marks on Victim's neck were a week old or appeared to be more recent.

{8} Defendant moved for directed verdict on the claim of aggravated battery of a household member, which was based solely on the alleged strangulation. The district court denied the motion stating that "the SANE nurse's testimony and report with regard to the strangulation and the marks as well as [Victim's] testimony with regard to the strangulation" provided sufficient evidence for the count to go forward to the jury. Victim, however, never testified about being

4

strangled by Defendant, and the only evidence about strangulation came from the SANE.

{9} After deliberations, the jury found Defendant guilty of intimidation of a witness and aggravated battery against a household member (great bodily harm) based on the alleged strangulation, and not guilty of kidnapping, criminal sexual penetration, aggravated battery against a household member (deadly weapon), and false imprisonment. Defendant appeals his convictions on grounds of lack of sufficient evidence.

**DISCUSSION**

**Standard of Review**

{10} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted).

"The court should not re-weigh the evidence . . . or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence." *State v. Garcia,* 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. "[O]ur role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *Id.*

**Intimidation of a Witness**

{11} The district court instructed the jury as follows on intimidation of a witness:

> For you to find [D]efendant guilty of intimidation of a witness as charged in Count 5, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant knowingly intimidated or threatened [Victim] with the intent to keep [Victim] from truthfully reporting to a law enforcement officer information relating to:
> the commission or possible commission of kidnapping, criminal sexual penetration or aggravated battery against a household member;
>
> 2. This happened in New Mexico on or between July 10th and July 17th, 2015.

{12} At trial, Victim testified that Defendant told her that she could not go to the hospital for her injuries because the State would take away the towing warrants for their business if he was arrested for domestic violence. The towing business was the family's only source of income and, according to Victim, loss of that business and its related income would have negatively impacted the family. When she insisted on calling her stepmother, Defendant told Victim to say that she had been

6

in a four-wheeler accident, which Victim did. Victim also testified at trial that when she was leaving the house with her stepmother to seek medical care, Defendant approached her and said what sounded like, "Don't fuck this up." In addition, Defendant made these statements after he had previously told Victim that he would rather see her dead than with anyone else and that he did not have a problem taking out any police officers or anyone else who came to help Victim.

{13}    Defendant argues that Victim's testimony concerning his statements that their only source of income would be lost if she went to the hospital after he assaulted her on July 16, 2015, and his statements warning Victim as she was leaving for the hospital with her stepmother the following day do not qualify as intimidation of a witness. According to Defendant, he was simply trying to persuade Victim about the legal consequences if she reported acts of domestic violence. He maintains that such statements—ones that do not include a threat of physical harm, violence, or an unlawful act—do not constitute intimidation or threats under Section 30-24-3(A)(3). Defendant also argues that reversal is required because he was acquitted of "two of the three felonies which formed the basis for the intimidation of a witness charge" and because the State's primary theory of guilt was legally erroneous. We are unpersuaded.

{14}    In *State v. Fernandez*, we upheld the defendant county commissioner's conviction for intimidation of a witness based on a letter he sent to his arresting

7

officer stating that the officer and his wife were in violation of a federal food commodities program. 1994-NMCA-056, ¶ 1, 117 N.M. 673, 875 P.2d 1104. Although the officer testified that he was not intimidated by the defendant's calls and letters, we nevertheless concluded that the purpose of the letter was to intimidate the police officer and prevent him from testifying at trial and, as a result, such conduct was sufficient to constitute intimidation. *Id.* ¶¶ 1, 33-36. In reaching our holding, we noted that to establish the crime, the state is not required to prove that the victim actually felt intimidated. *Id.* ¶ 35.

{15} Similarly, in *In re Gabriel M.*, 2002-NMCA-047, ¶¶ 2, 5, 132 N.M. 124, 45 P.3d 64, a juvenile defendant told two fellow employees who saw him commit a crime that if he got in trouble, "he would know who told." The defendant challenged the charge of intimidation of a witness, arguing that he never intended to keep the witnesses from talking to law enforcement about potentially incriminating conduct they may have witnessed, and that the witnesses were not afraid at the time he made the statement. *Id.* ¶¶ 23, 26. Noting that there was conflicting evidence regarding whether the witnesses were afraid to disclose information because of something the defendant said to them, we concluded there was sufficient evidence to support the conviction. *Id.* ¶ 26.

{16} Given our holdings in the above cases and that Defendant has provided no law to the contrary, we conclude that there was sufficient evidence from which a

8

jury could find that Defendant committed intimidation of a witness. We also reject Defendant's argument that he cannot be convicted of intimidation if he was not ultimately convicted of the felony he was attempting to prevent Victim from disclosing. As we have explained "a defendant may be convicted of intimidation of a witness even if he is acquitted of any crime associated with the actions relating to the commission or possible commission of a felony." *Id.* ¶ 32 (internal quotation marks and citation omitted).

{17} Because the State presented sufficient evidence to support Defendant's conviction for intimidation of a witness, in violation of Section 30-24-3(A)(3), we affirm his conviction.

**Aggravated Battery Against a Household Member (Great Bodily Harm)**

{18} The district court instructed the jury on the count of aggravated battery on a household member (great bodily harm) as follows:

> For you to find [D]efendant guilty of aggravated battery with great bodily harm against a household member as charged in Count 3, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.    [D]efendant touched or applied force to [Victim's] neck by strangling her;
>
> 2.    [D]efendant intended to injure [Victim];
>
> 3.    [D]efendant acted in a way that would likely result in death or great bodily harm to [Victim];
>
> 4.    [Victim] was a household member of [D]efendant;

9

5.      This happened in New Mexico on or between July 10th and July 17th, 2015.

{19}    The jury was also given an instruction on great bodily harm:

Great bodily harm means an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body.

{20}    Defendant argues that there was insufficient evidence to convict him of aggravated battery against a household member (great bodily harm) because the only evidence that Victim was strangled came from the SANE's testimony and report that constituted inherently unreliable hearsay, and even if the SANE's testimony and report can be relied upon, there is nonetheless insufficient evidence to sustain his conviction. We agree with Defendant's argument as to the sufficiency of the evidence.

{21}    Because Defendant did not object to admissibility of the evidence as hearsay at trial, we will treat the SANE's testimony and report as competent evidence for purposes of this appeal. *See State v. Romero*, 1960-NMSC-047, ¶ 16, 67 N.M. 82, 352 P.2d 781 ("We have held that hearsay, admitted without objection, is to be considered along with other evidence in determining whether there is substantial evidence to sustain a verdict on appeal[.]"); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Although we consider the SANE's report and

10

testimony as admissible evidence, we conclude that the evidence was not sufficient to establish the elements for aggravated battery of a household member.

**{22}** While Victim described in detail multiple instances of alleged abuse on July 10 and 16, 2015, she did not testify at trial that Defendant strangled her. The only evidence that Victim was strangled was a statement in the SANE report quoting Victim as stating that Defendant had strangled her in the prior week, the SANE's testimony at trial re-iterating the report's statement, and the photographs showing neck bruises. Even assuming that Defendant did strangle Victim, there is no evidence that Defendant "acted in a way that would likely result in death or great bodily harm" to Victim as required by the jury instruction. *See State v. Wynn*, 2001-NMCA-020, ¶ 4, 130 N.M. 381, 24 P.3d 816 ("Aggravated battery is a specific intent crime."); *cf. State v. Hollowell*, 1969-NMCA-105, ¶ 29, 80 N.M. 756, 461 P.2d 238 (concluding that the victim's testimony that the defendant choked him so that his breath was cut off was sufficient to show that the defendant's conduct created a "high probability of death").

**{23}** Because the State did not offer evidence that "each element of the crime [was] established beyond a reasonable doubt[,]" *State v. Garcia*, 1992-NMSC-048, ¶ 27, 114 N.M. 269, 837 P.2d 862, the evidence is insufficient to support Defendant's conviction for aggravated battery against a household member (great

bodily harm), in violation of Section 30-3-16(C). We therefore reverse this conviction.

**CONCLUSION**

{24} For the reasons set forth above, we affirm Defendant's conviction for intimidation of a witness and reverse Defendant's conviction for aggravated battery of a household member (great bodily harm) and remand for re-sentencing and further proceedings consistent with this opinion.

{25} **IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____

**STEPHEN G. FRENCH, Judge**


_____

**HENRY M. BOHNHOFF, Judge**