This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40678**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LLOYD HAMILTON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Jared G. Kallunki, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief in the above-entitled cause, pursuant to this Court's notice of assignment to the general calendar with modified briefing. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022, we affirm for the following reasons.

**BACKGROUND**

**{2}**     Defendant's convictions evolved out of a harrowing episode of domestic violence. On January 5, 2021, Defendant and his girlfriend, Michelle Niece, were at her home when an argument erupted. Niece later explained that Defendant grabbed her by the hair and put a gun to her head, threatening to kill her. [BIC 2] She was able to "talk him down" and convinced him to let her go to the home of one of her friends, Lisa Lester. [BIC 2] Defendant accompanied her. [BIC 2] When they arrived they were greeted by Lester and another of Lester's friends, Truman Schear. [BIC 2] A surveillance video captured the ensuing events. [BIC 2]

**{3}**     Initially Lester, Schear, Niece, and Defendant sat in the living room, visiting and drinking beer. [BIC 2] After a while Schear stepped out of the room. [BIC 2] At that point Niece mentioned that her neck was hurting. [BIC 2] When Lester asked why, Niece told her to ask Defendant. [BIC 2] Defendant jumped up, pulled a gun, pointed it at Niece's forehead and said, "You f-in bitch. You said you weren't going to say anything." [BIC 2] Lester stood up, walked over to Defendant, and told him to leave her home. [BIC 2] Defendant responded, "[Y]ou better get the fuck away from me, bitch," and pointed the gun at her. [BIC 2-3] Lester grabbed her phone and walked toward the back door, calling the police. [BIC 3]

**{4}**     As Lester was walking out Schear was walking back in, and she told him that Defendant had a gun to Niece's forehead. [BIC 3] Upon entering the living room and seeing that Defendant had Niece by the throat and a gun to her head, Schear rushed toward Defendant, jumped on him, and began to wrestle with him. [BIC 3] A shot went off, hitting the ceiling, before Schear and Niece were able to take the gun away. [BIC 3] As Defendant attempted to retrieve the gun Schear continued to wrestle with him. [BIC 3] Niece told Schear that Defendant had a second gun in his jacket pocket, for which he was apparently reaching. [BIC 4] Schear grabbed Defendant's right wrist, and Defendant pulled the trigger. [BIC 4] The bullet struck Schear's left thigh. [BIC 4]

**{5}**     Lester had been outside communicating with police dispatch when she heard the shots. [BIC 3] Niece called out to her and explained that Defendant had shot Schear. [BIC 4] As Lester attempted to assist Schear with his injury, Defendant stepped over him and walked out the front door. [BIC 4-5] Lester told Niece to close and lock the door to prevent Defendant from coming back into the home. [BIC 5] Defendant soon returned and kicked in the door to gain reentry. [BIC 5] Police officers then arrived, secured the scene, and took Defendant into custody. [BIC 5; RP 15-17]

**{6}**     At trial the surveillance video was played, and numerous witnesses testified to the facts described above. [BIC 6] The jury ultimately found Defendant guilty of aggravated battery with a deadly weapon, aggravated assault against a household member, and breaking and entering. [BIC 6; RP 114, 118, 122]

**DISCUSSION**

**{7}** On appeal Defendant raises a single issue, challenging the sufficiency of the evidence to support the conviction for aggravated battery. [BIC 7-12]

**{8}** When examining a sufficiency-of-the-evidence claim, we consider "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Treadway*, 2006-NMSC-008, ¶ 7, 139 N.M. 167, 130 P.3d 746 (internal quotation marks and citation omitted). The Court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in favor thereof. *Id.* The Court will not reweigh the evidence or substitute its judgment for the judgment of the fact-finder. *Id.*

**{9}** The offense of aggravated battery with a deadly weapon is defined as "the unlawful touching or application of force to the person of another with intent to injure that person or another . . . with a deadly weapon." NMSA 1978, § 30-3-5(A), (C) (1969). To support a conviction in this case the State was required to prove: (1) Defendant touched or applied force to Schear by shooting him with a firearm; (2) Defendant intended to injure Schear; and (3) this happened in New Mexico on or about January 5, 2021. [RP 175] *See* UJI 14-322 NMRA (defining the elements of aggravated battery with a deadly weapon). *See generally State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (observing that "jury instructions become the law of the case against which the sufficiency of the evidence is to be measured" (alteration, internal quotation marks, and citation omitted)).

**{10}** In satisfaction of its burden of proof the State presented the testimony of Niece, Lester, and Schear, as well as the surveillance video recording and the testimony of investigating officers. [BIC 6] Defendant's own statement to police was also presented, in the course of which he indicated that he had shot a man. [BIC 9] We conclude that this evidence amply supports the conviction. *See, e.g.*, *State v. Valles*, 1972-NMCA-076, ¶¶ 1-6, 84 N.M. 1, 498 P.2d 693 (rejecting a challenge to the sufficiency of the evidence to support a conviction for aggravated battery, where the defendant first made threatening statements, then put his hand in his pocket, the victim attempted to grab him, and the defendant then shot the victim, in addition to pointing a gun at another individual).

**{11}** Defendant contends that the evidence failed to establish his specific intent to injure Schear. [DS 7-11] *See generally State v. Wynn*, 2001-NMCA-020, ¶ 4, 130 N.M. 381, 24 P.3d 816 (holding that to prove aggravated battery, the state must prove that the defendant "subjectively intended the consequences of application of force to the victim and injury to the victim from that application of force"). We disagree. "[I]ntent to injure can be inferred from [the d]efendant's conduct and the surrounding circumstances." *State v. Morales*, 2002-NMCA-052, ¶ 34, 132 N.M.146, 45 P.3d 406, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. As previously described, Defendant deliberately pointed a gun at both Niece and Lester before shooting Schear in the course of a struggle. The circumstances amply support a rational inference of specific intent to injure. *See, e.g.*, *Valles*, 1972-NMCA-

076, ¶¶ 4-6 (observing that "[i]ntent to injure need not be established by direct evidence but may be inferred from conduct and the surrounding circumstances," and ultimately holding that specific intent to injure could be inferred where the defendant threatened and then shot the victim). *See generally State v. Gammill*, 1985-NMCA-014, ¶ 15, 102 N.M. 652, 699 P.2d 125 ("If the shooting was intentional, [the] defendant may be presumed to have the intent to injure because of his use of the gun.").

**{12}** Finally, we understand Defendant to suggest that if this Court were to reweigh the evidence, we might find that a reasonable doubt existed with respect to his specific intent. [DS 10-11] However, as a reviewing court we will not second-guess the jury's assessment. *See State v. Armendariz-Nunez*, 2012-NMCA-041, ¶ 16, 276 P.3d 963 ("The question is whether the conviction is supported by substantial evidence, not whether the fact[-]finder could have reached a different conclusion." (alterations, internal quotation marks, and citation omitted)); *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 ("The question before [the] reviewing court is not whether [the court] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." (alterations, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{13}** In light of the foregoing, we affirm.

**{14}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**